IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

EDWARD C. HUGLER, Acting Secretary,
United States Department of Labor,

    Plaintiff,

v.

MARGARET MARANTO, *et al.*,

    Defendants.

Case No. CIV-15-1378-D

**O R D E R**

Currently before the Court is Defendants' First Motion to Compel Discovery [Doc. No. 24], which is fully briefed.[1] The Court heard oral arguments concerning multiple discovery matters on March 7, 2017, and ruled on most issues, but took the instant Motion under advisement. Upon consideration of the parties' written submissions, the arguments of counsel, the case record, and governing law, the Court issues its decision.

This case involves claims by the United States Department of Labor that Defendants Meers Store & Restaurant, Inc. and its manager, Margaret Maranto, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to pay statutory minimum wages to employees, failing to pay overtime compensation, failing to comply with child labor provisions, and failing to maintain required records of wages and hours. Defendants have issued interrogatories and requests for production of documents and, by their Motion,

---

[1] Defendants filed a supporting brief [Doc. No. 26]; Plaintiff filed a response [Doc. No. 33]; and Defendants replied [Doc. No. 38].

challenge Plaintiff's objections, answers, or responses to certain items. An overarching issue is Plaintiff's refusal to identify employees who participated in its investigation and employees who may testify as witnesses based on an informer's or informant's privilege. The Court begins by addressing this privilege and then turns to other claims of privilege and specific discovery requests.

**A.     Informer's Privilege**

It is well settled in the Tenth Circuit that the government is entitled to assert an informer's privilege in a civil FLSA case. *See Usery v. Ritter*, 547 F.2d 528, 529 (10th Cir. 1977). This evidentiary privilege permits the government "to withhold from disclosure the identities of persons furnishing information of law violations to law enforcement officers." *Usery v. Local Union 720*, 547 F.2d 525, 527 (10th Cir. 1977). It is a qualified privilege that requires a balancing of the government's interest in protecting its sources against the defendant's need for the information to prepare a defense. *See Ritter*, 547 F.2d at 531; *Local Union 720*, 547 F.2d at 528. During the discovery stage of litigation, the party seeking to overcome the privilege must show a substantial need for the identification of informants. *See Local Union 720*, 547 F.2d at 528; *Ritter*, 547 F.2d at 531; *see also Brock v. Gingerbread House, Inc.*, 907 2d 115, 116 (10th Cir. 1989): *Brock v. R.J. Auto Parts & Serv., Inc.*, 864 F.2d 677, 678 (10th Cir. 1988).

Employers attempting to discover the identities of cooperating employees "have the burden of showing a specific need for discovery which supersedes the need for an informer's privilege." *Perez v. El Tequila, LLC*, No. 12-CV-588-JED-PJC, 2014 WL

5341766, *5 (N.D. Okla. Oct. 20, 2014) (internal quotation omitted). In this case, Defendants have not articulated any specific need for the identities of employees who were interviewed by Plaintiff's investigators. Further, Plaintiff's counsel represents that during the informal conference required by LCvR37.1, the government agreed to produce redacted versions of the employees' interview statements that omitted identifying information, and that the redacted statements were produced to Defendants' counsel shortly before the government's response brief was filed. *See* Pl.'s Res. Br. [Doc. No. 33] at 2-3. Defendants do not dispute this representation or explain why the redacted statements are insufficient to meet their discovery needs. Accordingly, the Court finds that Defendants have failed to overcome Plaintiff's claim of privilege regarding the identities of interviewed employees.

The case law is equally clear, however, that the informer's privilege does not protect the identities of trial witnesses. At some point, usually at the final pretrial conference or "in connection with a pre-trial order, [the government] must list its witnesses" who will testify in its case in chief. *See Local Union 720*, 547 F.2d at 528; *Gingerbread House*, 907 F.2d at 117; *R.J. Auto*, 864 F.2d at 679. In this district, the identification of witnesses usually takes place during discovery through the disclosure of a final witness list, and a standard scheduling order expressly provides: "Except for good cause shown, no witness will be permitted to testify and no exhibit will be admitted in any party's case in chief unless such witness or exhibit was included in the party's filed witness or exhibit list." *See* Scheduling Order [Doc. No. 15], at 1. In this case, the parties requested a standard scheduling order. *See* Joint Status Report & Discovery Plan [Doc. No. 12], ¶ 14. Plaintiff

now seems to assert that it need not comply with the Scheduling Order due to the informer's privilege but may wait and disclose its employee witnesses shortly before trial, presumably in the Final Pretrial Report that will be filed with other trial submissions. Defendants understandably take issue with the government's decision to deviate from the Scheduling Order without leave of court, and to withhold the identities of its employee witnesses.

The Court does not condone Plaintiff's unilateral decision to disregard the Scheduling Order and refuse to disclose potential trial witnesses. By failing to make a timely disclosure, Plaintiff risks a ruling by the Court that employee witnesses will not be permitted to testify in Plaintiff's case in chief. However, Defendant does not seek this sanction but instead seeks an order compelling Plaintiff to make a disclosure now. Because Plaintiff has not waived its informer's privilege, the Court declines to issue such an order. The Court does direct that Plaintiff must disclose any potential employee witnesses, at the latest, when identifying its trial witnesses in the Final Pretrial Report. At that time, Defendants may move to depose or conduct discovery regarding any newly disclosed witnesses for whom more information is needed.[2]

**B.      Other Privileges**

Defendants also assert that Plaintiff has wrongly refused to provide information and documents by claiming the deliberative process privilege. In response, Plaintiff has submitted copies of supplemental discovery responses provided to Defendants on

---

[2] The Final Pretrial Report is a jointly prepared document that Plaintiff is responsible for preparing and arranging to file in a timely manner. *See* LCvR16.1(c). Thus, the names of Plaintiff's trial witnesses will necessarily be disclosed in the drafting process.

January 19, 2017, and an amended index and privilege log for produced documents. Pl.'s Resp. Br., Ex. 3 [Doc. No. 33-3]. This submission shows that Plaintiff has withdrawn its deliberative-process objection to some requests and has withheld only a few documents from production based on this privilege. These documents consist of three reports, a transmittal sheet, and a computation summary; an internal memorandum referring the case for litigation was withheld based on this and attorney-client privileges; and a narrative report and addendum have been redacted based on this and other privileges. Defendants do not present any specific issue for decision with respect to these documents. Therefore, the Court cannot make a reasoned decision regarding the applicability of the deliberative process privilege, and declines to address this issue on the present record.[3]

## C. Specific Discovery Requests

Defendants contend Plaintiff has failed to provide sufficient answers and document production regarding certain requests in Defendants' Amended First Set of Interrogatories, Request for Admission, and Request for Production of Documents.[4] Defendants' Motion is governed by Rule 26(b)(1), which authorizes the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy,

---

[3] Defendants also make a general request that the Court order Plaintiff to produce all documents listed in privilege logs as withheld from production based on any privilege. *See* Defs.' Br. [Doc. No. 26], at 13. This request similarly presents no specific issue for decision.

[4] Defendants do not provide a copy of their discovery requests with the Motion, but the requests are stated in Plaintiff's responses, which are attached to Plaintiff's brief. *See* Pl.'s Resp. Br., Ex. 1 [Doc. No. 33-1].

the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

1.     **Document Requests No. 1 and No. 2**

Defendants asked Plaintiff to produce "diary sheets" prepared during the investigation and documents referred to therein. Plaintiff produced responsive documents, including the investigation file and a document containing case diary entries from which information protected by the informer's privilege had been redacted.[5] Defendants do not articulate any specific reason why this production is insufficient to meet their need for discovery. The Court finds Plaintiff's production is sufficient.

2.     **Document Requests No. 3, No. 7 and No. 8**

Defendants requested the production of a "drop file" and "'E' establishment orders" showing hours spent at the restaurant during the investigation. Plaintiff responded that it was not familiar with these terms but it had produced the investigation file. Defendants also requested records of "data and time events" regarding the investigation. Plaintiff responded that it had produced the investigation file, including the redacted case diary entries.

---

[5] Plaintiff provides a copy of the redacted case diary entries with its response brief. *See* Pl.'s Resp. Br., Ex. 6 [Doc. No. 33-6]. It appears that most, if not all, of the redactions are based on the informer's privilege. Defendants do not address the redactions or explain why the produced documents are insufficient to meet their need for discovery.

In their Motion, Defendants describe the "drop file" as a file kept by investigators or managers that is separate from the investigation file and includes evaluations of the investigators by their supervisors. Plaintiff says no such file exists, but that investigators are evaluated by supervisors and records of the evaluations are kept. Plaintiff contends Defendants have not explained any relevance of these evaluations. Defendants fail to address this contention in their reply brief, except to insist that a "drop file" exists. *See* Defs.' Reply Br. [Doc. No. 38] at 4. Regarding "'E' establishment orders" and other "data and time events" records, Plaintiff maintains it has no responsive documents other than those already produced. Defendants make no reply to this contention.

The Court accepts Plaintiff's representation that there is no "drop file" because Defendants present no factual basis to find otherwise. Plaintiff cannot be compelled to produce a file that does not exist. Defendants also present no basis to conclude that Plaintiff has failed to produce any other requested documents. Therefore, the Court finds Plaintiff's responses are sufficient.

### 3. Document Requests No. 5, No. 6 and No. 17

Defendants requested the production of interview statements from the investigation, redacted interview statements, and records showing the number of employees interviewed. Plaintiff initially objected but later produced redacted interview statements omitting information that would identify the employees interviewed. Defendants do not contend the redacted statements are insufficient to satisfy their discovery needs. At this point in the

case, the Court finds this production is sufficient because the redacted information is protected by the informer's privilege.

### 4. Document Requests No. 9 and No. 10

Defendants requested the production of handbooks or policy manuals followed by the investigators in this case. Plaintiff responded that the applicable field operations handbook was publicly available, and provided the internet link. Defendants contend in their Motion that Plaintiff should be required to furnish a copy of each handbook or policy manual used in the investigation. In response, Plaintiff identifies the applicable sections of the identified handbook and other produced documents that explain the investigative process. Plaintiff states that no other documents reasonably responsive to these requests exist. The Court finds Plaintiff's response to be sufficient under Rule 26(b)(1).

### 5. Document Request No. 11

Defendants requested the production of "each written finding or written conclusion by the Plaintiff which supports the allegation in ¶10, ¶11 and/or ¶12 [of the Complaint] that the Defendants, or either of them, are guilty of willful violations." *See* P.'s Resp. Br., Ex 1 [Doc. No. 33-1] at 5. Plaintiff objected, but stated that the investigation file produced to Defendants contained a narrative report explaining the bases of the violations (with redactions to protect privileged information). Defendants simply insist in their Motion that Plaintiff should produce unredacted documents. They do not explain why the redacted document is insufficient or why Plaintiff's production is otherwise incomplete. Accordingly, the Court finds that Plaintiff's response is sufficient.

### 6. Document Request No. 12

Defendants requested the production of the "Dummy File" referred to in a narrative report, which is described as a copy of the investigation file that was made to be kept at the division office when the original was sent to the regional solicitor's office for litigation purposes. Plaintiff responded that the request sought duplicative information because Defendants already had a copy of the investigation file and the dummy file contained the same information and documents as the original file.

Defendants assert that Plaintiff should be required to produce the dummy file because it might be different from the investigation file. They do not explain what additional information might be obtained from a duplicate file; their arguments instead suggest they are using the term "dummy file" to refer to some sort of file that employees at the division office might keep to store additional documents not contained in the investigation file. *See* Defs.' Reply Br. [Doc. No. 38] at 5. However, Defendants' discovery request sought the "dummy file" referred to in the narrative report, which is a duplicate of the investigation file previously produced to Defendants. The Court finds insufficient reason to require Plaintiff to produce the "dummy file" sought by Defendants' request.

### 7. Interrogatory No. 2

Defendants posed an interrogatory that asked Plaintiff to identify each person who calculated the amounts allegedly due for unpaid minimum wages and overtime compensation, to state the amount owed for each of these types of wages, to explain in

9

detail how these amounts were calculated, and to explain how any estimates or projections were determined and used in the calculations. Plaintiff objected on the ground that this is an "overly broad and unduly burdensome contention interrogatory," but it answered by stating that the wage computations were contained in documents produced to Defendants and identifying the documents. *See* Pl.'s Resp. Br., Ex. 1 [Doc. No. 33-1] at 8-9.

Defendants state in their Motion that Plaintiff's response is insufficient, without identifying any particular deficiency or explaining what additional information is needed. Plaintiff responds that, based on the documents produced and the discussions between counsel, "Defendants know that the lead investigator, Cheryl Masters, computed the back wages" owed to employees and where to find the amounts calculated for each employee. *See* Pl.'s Resp. Br. [Doc. No. 33] at 15. Plaintiff states that certain documents "detail how amounts were calculated." *Id*. Plaintiff also states that Defendants' lack of records required the use of wage reconstruction methods to make "back wage computations for 84 employees in multiple job categories for an approximate three-year period," and that "requiring the investigator to provide a narrative explanation of all computations is overly burdensome and more than is required in this case." *See* Pl.s Resp. Br. [Doc. No. 33] at 15. Plaintiff contends Defendants should pose specific questions or obtain any additional information they need through depositions of the investigators. Defendants only reply is: "The accuracy and reliability of the damage/loss computations by the Plaintiff are in question, and this discovery is proper." *See* Defs.' Reply Br. [Doc. No. 38] at 5.

Although the wage information sought by Defendants is certainly relevant and in this sense proper, the Court finds that Plaintiff has substantially answered this interrogatory through the production of records, as permitted by Rule 33(d). The Court further finds that requiring Plaintiff to draft a detailed narrative explanation of how each wage calculation was done, how each estimation or projection was determined, and how these estimations were used in the calculations, would not be an efficient use of Plaintiff's resources or proportional to the needs of the case, particularly in light of Defendants' failure to identify any particular insufficiency or need for additional information. Therefore, the Court concludes that Plaintiff's answer is sufficient under Rule 26(b)(1).

IT IS THEREFORE ORDERED that Defendants' First Motion to Compel Discovery [Doc. No. 24] is DENIED.

IT IS SO ORDERED this 17th day of April, 2017.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE