Case 5:15-cv-01378-D   Document 73-2   Filed 05/04/17   Page 1 of 15



EXHIBIT O

## Supplemental Expert Witness Report
### April 17, 2017
### Department of Labor v Meers (W.D. of Oklahoma, Case No. CIV-15-1378-D)

I, Randall G. O'Neal, am a wage and hour consultant based in Garland, Texas. I was employed by the Wage and Hour Division (WHD) of the United States Department of Labor for approximately 40 years. I began my career with WHD as an investigator and in that position individually conducted over 1,000 investigations, primarily under the Fair Labor Standards Act (FLSA). I held positions in 2 district offices in Oklahoma and Texas, and spent the final 25 years of my career in the Dallas Regional Office – one of 5 such offices in the United States. During the 20 years just prior to my retirement in 2015 I served as Director of Regional Operations and Regional Director of Enforcement for the 11-state Southwest Region. I was the top enforcement official in the region during that period of time and served on the agency's Enforcement Policy Advisory Committee and performed several details in the agency's national office in enforcement-related roles. Additionally, I conducted internal investigations regarding the conduct of WHD managers and staff, and led a team conducting accountability reviews of all district offices within the Region.

At the request of attorney Bill V. Wilkinson, I have examined and reviewed documents disclosed by the U.S. Department of Labor (DOL) related to the FLSA investigation of Meers Store and Restaurant (Meers) conducted by the Wage and Hour Division in 2015. I would note that I was replaced as Director of Enforcement in late 2014 when I announced my intention to retire and had no knowledge of this investigation much less any involvement in it prior to my retirement. Since my retirement I have never had a conversation with any employee of the WHD about this investigation. I first learned of this investigation in 2016 when furnished a newspaper article about the filing of this lawsuit against Meers.

The documents furnished to me by Mr. Wilkinson include a redacted copy of the case diary sheet, redacted narrative report, back wage computations, summary of unpaid wages, correspondence from WHD representatives including appointment letter, 72-hour letter, penalty assessment letters, case file notes, forms related to child labor or other aspects of the investigation, copies of some timecards, work schedules, payroll journals, check stubs and other miscellaneous material related to the conduct of the investigation. For my work I am being paid $150.00 per hour plus expenses. I have authored no publications in the past 10 years. During the past 4 years I have testified only once, in a hearing before the Merit System Personnel Board.

Additionally, I have discussed the investigation with Margaret Maranto, a defendant in this FLSA lawsuit filed by the Secretary of Labor and with her husband Joe, who was present for some interaction with the WHD investigators. I have spoken with 5 present and former employees of Meers about their employment at Meers and the conduct of the WHD investigation. Also, I attended the depositions of Margaret Maranto, Joe Maranto and Rowland Cunningham taken by an attorney for the Secretary of Labor. Further, I attended depositions of the WHD representatives involved in this investigation. They include lead

1 of 8

investigator Cheryl Masters, investigator Lindsay Arnold, Assistant District Director (ADD) Mike Lonesky and District Director (DD) Michael Speer.

It is my opinion that the investigation of Meers Store and Restaurant under the FLSA was not conducted in accordance with long-established policy of the Wage and Hour Division in several regards and in fact violated some policies. The rights of the employer and some employees were abridged in the conduct of the investigation and the findings and conclusions of the investigation are flawed. The investigation should be disregarded.

*Conduct of the Investigation:*

Period of Investigation:

According to Chapter 51 of the Wage and Hour Division Field Operations Handbook (FOH) this investigation should have covered a 2-year period of time since this employer (Meers) had no prior history of investigation by WHD, nor any history of private litigation regarding the FLSA. Documents indicate that the investigators knew of the absence of any history, but nevertheless advised the employer that the investigation would cover a 3-year period. Investigator Masters testified that she decided to use a 3-year statute of limitations prior to any contact with Meers. Her decision appears to have been based on complaint information alone which is notoriously unreliable, as documented in the records kept by the WHD regarding complaint-based investigation findings and ADD Lonesky testified that some complaints are valid and some are not. Any decision to extend the investigation a 3rd year should have been based on evidence developed during the course of the investigation as required by the FOH. Further, I saw no documentation of approval by the WHD regional office or the Office of the Regional Solicitor of the extension of the investigation to the 3rd year – such approval is required by regional policy and the FOH. A copy of FOH Chapter 51, which is not available to the general public, has been requested from the DOL and could be used as an exhibit.

Use of a "72-hour letter":

During the course of the investigation WHD made use of a "72-hour letter" which is the precursor to an administrative subpoena. Regional policy requires approval of the WHD regional office and the Office of the Regional Solicitor prior to the use of this letter and the investigation case file must document those approvals. I found no such documentation in the case file documents disclosed by DOL.

Conduct of Investigators:

Journey-level (GS-12) investigators are expected and required to conduct investigations independently except in rare situations approved by the district office manager and usually by the regional office. An example would be a task force investigation or where numerous employees would be encountered with a need to conduct interviews quickly before they departed the establishment – neither circumstance was present with Meers. Notwithstanding this long established policy two (2) journey-level investigators conducted this investigation as an unannounced, surprise investigation which appears to have been done as part of an overall strategy of intimidation of a small employer – approximately 8 to 10 employees in total with only 4 or 5 employees per shift. Allegations of child labor violations affecting health or safety would justify an unannounced investigation, but not one requiring two GS-12 investigators. Investigators Masters and Arnold testified that two (2) persons were justified by safety concerns since the restaurant is in a remote area. But, Masters testified that she had eaten at the restaurant before, evidently without safety concerns, and Arnold testified that she went to the restaurant approximately five (5) times and never felt any danger there.

In conducting interviews with employees of Meers present at the time the WHD investigators arrived I heard that employees were threatened by the words and actions of the investigators. One employee was told he could be charged with obstruction and put in jail. Another told in his interview that if any of his responses were untrue he could be charged with perjury. Another employee, a server who depends on tips from customers for a portion of her wages, asked to not be interrupted from her duties for an interview because it would cause her to lose earnings, was answered with insistence from the investigators that she stop work for an interview. Each of these actions and statements by WHD investigators are contrary to agency policy and training because they are intimidating, interruptive of the business operation and have no foundation in truth or necessity. Further, the investigators began the interviews before either of the Marantos was contacted to give permission for the employees to be interviewed during working hours. This also was contrary to WHD policy and more importantly abridged the employer's rights under the Small Business Regulatory Enforcement Fairness Act (SBREFA). Both investigators testified that an appointment letter was hand-served to Rowland Cunningham who was present at the restaurant when the arrived to begin the investigation and that they explained to him the purpose of their visit. It is important to note that Investigator Masters determined that Mr. Cunningham was not a manager, but rather an employee of the restaurant so she knew he could not give permission for the employee interviews since she concluded he was not a member of management.

With further regard to employee interviews, from the documents (even those heavily redacted by DOL) I examined it is clear that numerous employee interviews were conducted AFTER this file (enclosing findings, conclusions and calculations of back wages due) was submitted by the district office for litigation and many were conducted months AFTER suit was filed in this matter. This tells me that significant attempts were made by the WHD and the DOL attorney to justify decisions made months prior by the investigator – many of those decisions are now exposed as against agency policy and procedure.

In my conduct of internal investigations while employed by the WHD I encountered circumstances similar to those described above, where investigators conducted themselves contrary to agency policy. In each instance the investigator was subject to disciplinary action by the agency and the employer who suffered such treatment was granted relief.

The FOH requires an employer be given a publication called "Handy Reference Guide" (HRG) at the initial conference or at the first meeting between the investigator and the employer. If an appointment letter scheduling the initial conference is utilized by the investigator, the HRG is to be enclosed in the envelope. The HRG gives the employer information including notice of their rights during the investigation, including those under the SBREFA. Mr. and Mrs. Maranto testified they were not provided with a copy of the appointment letter or any publications during the initial visit of the two (2) investigators. The HRG was not provided to this employer until they retained counsel and a meeting was held several days later with the WHD investigators in counsel's office. Intentionally withholding the HRG publication from an employer under investigation restricts their knowledge, particularly an employer who has never had contact before with the WHD, and places them at a distinct disadvantage and subjects them to intimidating tactics.

### *Findings and Conclusions of the Investigation*

According to the redacted copy of the investigation narrative report provided to me the lead investigator alleged violations of the FLSA. She asserted violations of the minimum wage, overtime, recordkeeping and child labor sections of the law. Below I will address each of these sections separately.

Minimum Wage:

The narrative report indicates in the summary of violations that the employees were sometimes paid on a cash basis. In other words, the report finds that payment by cash is a violation of the Act. To pay an employee in cash is quite simply not a violation of the FLSA. There is nothing is the Act prohibiting an employer from paying wages in cash, actually employers may pay wages by utilizing a debit card. Yet, the investigator seems to portray this employer in a negative light for sometimes paying cash wages.

The narrative report alleges that short rest breaks of less than 20 minutes were deducted from hours reported on the timecards. This practice, while clearly wrong, would violate the minimum wage requirements of the FLSA only if it caused the employee to receive less than $7.25 per hour for their actual hours worked. In other words, subtracting time taken for short smoking breaks, 5 to 10 minutes, is prohibited, but does not always result in a monetary violation, but rather may constitute only a recordkeeping violation. My

interviews reveal that smoking breaks were not always deducted even when taken. Nevertheless, the back wage computation sheets seem to assert this violation and compute back wages with regard to all employees, even those who did not smoke and for smokers even when deductions from their timecard could not be substantiated.

Another alleged violation of the minimum wage regards incorrect rounding of hours on the timecards. I was able to examine only a few timecards and it appeared some had been tallied or totaled incorrectly. This likely varied depending on the person tallying the time – at least 3 different people performed this function – yet the violation is asserted across-the-board. If this actually occurred with regard to a timecard it should be remedied, but the timecards do not reflect time taken for bona fide meal breaks of over 20 minutes, which, when considered and factored into the tally of hours worked, could completely negate any failure to add up the hours worked correctly. That is the adding in of hours worked which were omitted due to incorrect rounding of hours could be offset by the subtraction of hours not worked due to a meal break which heretofore were included in the total of hours worked by the affected employee.

It is alleged that some compensable hours worked were performed by volunteers who were paid no wages and are due the minimum wage ($7.25) for the hours they worked. This assertion ignores evidence in the file that these individuals received tips. If this allegation is true then the individual is due $7.25 per hour less the amount of tips received. The case file alleges this violation and contains back wage computations which omit the tips.

This FLSA investigation concluded that Rowland Cunningham is due over $18,000 in unpaid minimum wage and overtime wages. After hearing Mr. Cunningham's testimony regarding his position at the restaurant it is my opinion that he was exempt from both minimum wage and overtime requirements of the Act under Section 13(a)(1). I think the investigators probably thought the same thing when they first encountered him during the investigation and that's why they furnished him with a copy of the appointment letter. Certainly the testimony of both Marantos would indicate Mr. Cunningham was either the kitchen manager or the restaurant manager during certain shifts.

Finally, there is an allegation that tip credit was mishandled and resulted in minimum wage violations. It appears the (former) Meers CPA utilized some IRS-approved method of determining tip income for employees receiving tips. Instead of recording the amount of tips as reported by the employee, the CPA took a percentage of sales (12%) as the amount of tips received. However, I found no evidence that employees failed to receive tips sufficient to bring them up to the full minimum wage ($7.25). This was especially true since the employer paid .45 cents per hour more than required by the FLSA for tipped employees.

Overtime:

Based on my conversations with employees and testimony in the depositions it appears the employer did not always pay time and one-half for overtime hours worked. However, the investigator asserts that some employees worked off-the-clock for as much as 2 hours per

week or per pay period – largely due to deductions for short smoking breaks – and arbitrarily adds 2 hours of overtime to the hours worked already paid to the employee. The 2 hours appears to be an unsubstantiated number and likely inflated when considering that some employees never had time subtracted from their timecard for taking short breaks. It also ignores the fact that the employer did not deduct for bona fide meal breaks of 20 minutes or more. If some overtime pay is due employees it is certainly in amounts far less than the overtime wages due as calculated in the investigation. Further, it appears the investigator alleges that the uncounted 2 hours per pay period represents overtime hours and is due at time and one-half. In reality if any time is due it may very well be due at straight time (minimum wage) and not at time and one-half because the time due would not cause the employee to have worked more than 40 hours in a workweek. Lastly, due to the Klinghoffer rule any unpaid straight time hours may have caused no monetary violation at all.

Recordkeeping:

There are clearly recordkeeping violations in this case. However, the great majority of those appear to be the result of entrusting those responsibilities to the CPA utilized by Meers. When that CPA passed away in 2014 it appears his widow destroyed boxes of records at her deceased husband's business (including those of Meers) rather than try to return them to his clients or give them to successor CPAs. This action outside the control of this employer resulted in an inability to produce all records required by the FLSA. This employer has retained a new CPA and appears to be maintaining all required records. In my 40 years of experience these types of mistakes happen and that is particularly true of employers never previously investigated by the WHD. It is also why the FLSA has never provided for fines or monetary penalties for employers who simply fail to maintain all records required by the Act. In cases like this the WHD has historically negotiated a fair resolution with an employer who can not produce time and payroll records due to a fire or some other reason beyond their control.

Child Labor:

According to the Complaint filed by the Secretary of Labor, Meers violated the child labor provisions of the FLSA in two (2) ways: 1) They employed minors under the age of 16 for more than 3 hours on a school day and/or more than 18 hours in a school week. Any evidence of these alleged violations obtained by WHD must be in the form of employee statements and those have not been furnished to me (or to Mr. Wilkinson); 2) They employed a minor under the age of 18 who operated a meat slicer and dough mixer in violation of a hazardous order. Again, evidence of this alleged violation obtained by WHD must be in the form of an employee statement which has not been furnished.

With regard to the first alleged violation it appears to involve minors who may not have been employed by Meers or at least that issue is unsettled. If the minor involved in the alleged violation is determined to have not been an employee then there is no violation, the

employment relationship being a requirement. There is agreement that minor children of Meers employees were present at the restaurant for brief periods of time when the restaurant was open for business (and their mother was working), but it is not clear whether any minor children performed any work and whether any Meers employer was aware such minors performed any work, much less whether they suffered or permitted such work.

In the depositions I attended I heard that the dough mixer allegedly used by a minor under the age of 18 was not operable during the period of time covered by the investigation. If that information is correct then the second alleged violation mentioned above is called into question. It should be noted that the alleged violations of the child labor provisions of the FLSA resulted in civil monetary penalties being assessed and that a separate administrative proceeding will determine the appropriateness of those assessed CMPs. The alleged child labor violations have nothing to do with alleged back wage claims asserted by DOL.

Liquidated Damages:

The FLSA provides that liquidated damages in an amount equal to back wages due employees shall be assessed against an employer. However, in cases where an employer can show a good faith effort to comply with the law, liquidated damages are not to be assessed. In this investigation the WHD assessed liquidated damages even though aware that this employer relied on the advice of a certified public accountant in the operation of their business. They depended on that advice to keep them in compliance with all applicable state and federal laws. In this particular instance Meers had been operating according to the advice of the CPA for over 30 years with no hint that they were not in full compliance – no contact by the WHD nor any private actions against them by employees as is available under the FLSA. After 30 years it seems understandable that an employer would assume the advice of the CPA was reliable.

In my former position as enforcement director for the WHD, I always allowed a good faith defense to stand when asserted by an employer who could give evidence that they operated their business relying on guidance from a CPA. I also informed them that in the future they should consult with an attorney, but I never challenged their good faith defense in those circumstances. District Director Michael Speer testified that a good faith defense had been allowed for an employer who relied on the advice of a CPA with regard to compliance with the FLSA. In my opinion this employer is entitled to a good faith defense.

Summary:

In his Complaint the Secretary of Labor is seeking to recover over $181,000 in back wages and an equal amount in liquidated damages for a total of more than $362,000 from both Defendants. In my opinion if every single allegation made by the DOL could be

substantiated the computation of back wages attributable to those violations, if correctly done, would be substantially less than $181,000. This is especially true since the investigator did not give proper wage credit for the discretionary bonus of 45 cents per hour above the minimum wage the employer was paying to tipped employees. Furthermore, any such recovery cannot come from the corporate Defendant. Investigator Masters testified that the sole employer in this investigation as defined by the terms of the FLSA is Margaret Maranto, an individual. Assistant District Director Mike Lonesky testified that he and District Director Speer were still discussing who was the employer in this investigation as late as the end of February 2017, long after the Secretary of Labor filed suit against these Defendants. District Director Speer testified that he would follow the conclusion of the case investigator with regard to determining the employer in this matter. I find it very significant that Investigator Masters testified that she never recommended this case for litigation. That fact gives rise to questions about whether she realized that if this case was litigated her conduct and conclusions during the investigation would be scrutinized, something she sought to avoid.

The computation of back wages contained in the case file is not justified by the application of the FLSA nor is it compliant with the policy of the WHD. My experience tells me the computation was intentionally designed to be punitive and was done in an effort to bring this employer into a submissive posture at the negotiation table – a tactic I have unfortunately seen before during my tenure with the WHD. Additionally, any true back wage liability should not be doubled by liquidated damages in these circumstances, i.e. a first investigation of an employer who relied on the advice of a CPA. Finally, the liability, if any, cannot be imposed on the corporate Defendant.

Respectfully submitted,


Randall G. O'Neal
Wage and Hour Consultant

# EXPERT WITNESS REPORT
## January 20, 2017
### Department of Labor v Meers (Western District of Oklahoma Case No. CIV-15-1378-D)

I, Randall G. O'Neal, am a wage and hour consultant/expert witness based in Garland, Texas. I was previously employed by the Wage and Hour Division (WHD) of the United States Department of Labor for approximately 40 years. I began my career with WHD as an investigator and in that position individually conducted over 1,000 investigations, primarily under the Fair Labor Standards Act (FLSA). I held positions in 2 district offices in Oklahoma and Texas, and spent the final 25 years of my career in the Dallas Regional Office – one of 5 such offices in the United States. During the 20 years just prior to my retirement in 2015 I served as Director of Regional Operations and Regional Director of Enforcement for the 11-state Southwest Region. I was the top enforcement official in the region during that period of time and served on the agency's Enforcement Policy Advisory Committee and performed several details in the agency's national office in enforcement-related roles. Additionally, I conducted internal investigations regarding the conduct of WHD managers, investigators and staff, and led a team conducting accountability reviews of all district offices within the Region. By training and experience, I am an expert in wage and hour matters.

At the request of attorney Bill V. Wilkinson, I have examined and reviewed the Complaint and Answer documents disclosed by the U.S. Department of Labor (DOL) related to the FLSA investigation of Meers Store and Restaurant (Meers) conducted by the Wage and Hour Division in 2015. I would note that I was replaced as Director of Enforcement in late 2014 when I announced my intention to retire and had no knowledge of this investigation much less any involvement in it prior to my retirement. Since my retirement I have never had a conversation with any employee of the WHD about this investigation. I first learned of this investigation in 2016 when furnished a newspaper article about the filing of this lawsuit against Meers.

The documents furnished to me by Mr. Wilkinson include documents furnished by the Department of Labor in discovery, include a redacted copy of the case diary sheet, redacted narrative report, back wage computations, summary of unpaid wages, correspondence from WHD representatives including appointment letter, 72-hour letter, penalty assessment letters, case file notes, forms related to child labor or other aspects of the investigation, copies of some timecards, work schedules, payroll journals, check stubs and other such material related to the conduct of the investigation. I have prepared an ROI (Report of Interview) for each person interviewed, and I rely on them. For my work I am being paid $150.00 per hour plus expenses. I have authored no publications in the past 10 years. During the past 4 years I have testified only once, in a hearing before the Merit System Personnel Board.


EXHIBIT M

1 of 7

...
...
...
...

Additionally, I have interviewed Margaret Maranto, a defendant in this FLSA lawsuit filed by the Secretary of Labor and I also interviewed her husband who is not a named defendant, but was present for some interaction with the WHD investigators. I have interviewed five (5) present and former employees of Meers about their employment at Meers and the conduct of the WHD investigation. Also, I attended the depositions of Margaret Maranto, Joe Maranto and Rowland Cunningham taken by an attorney for the Secretary of Labor.

OPINIONS

*(1)   Meers Store and Restaurant, Inc. should not be liable for any alleged violations, but if so, in a substantially less amount.*

*(2)   Margaret Maranto should not be liable for any alleged violations, but if so, in a substantially less amount.*

EXPLANATIONS:

It is my opinion that the investigation of Meers Store and Restaurant and Margaret Maranto under the FLSA was not conducted in accordance with long-established policy of the Wage and Hour Division in several regards and in fact directly violated some policies. The rights of the employer and some employees were abridged in the conduct of the investigation and the findings and conclusions of the investigation are flawed. The investigation should be disregarded.

Conduct of the Investigation:

Period of Investigation:

According to Chapter 51 of the Wage and Hour Division Field Operations Handbook (FOH) this investigation should have covered a 2-year period of time since this employer (Meers) had no prior history of investigation by WHD. Documents indicate that the investigators knew of the absence of any history, but nevertheless advised the employer that the investigation would cover a 3-year period. That decision appears to have been based on complaint information alone which is notoriously unreliable, as documented in the records kept by the WHD regarding complaint-based investigation findings. Any decision to extend the investigation a 3rd year should have been based on evidence developed during the course of the investigation as required by the FOH. Further, I saw no documentation of approval by the regional office or the Office of the Regional Solicitor of the extension of the investigation to the 3rd year – such approval is required by regional policy and the FOH. A copy of FOH Chapter 51 has been requested from the DOL and could be used as an exhibit.

Use of a "72-hour letter":

During the course of the investigation WHD made use of a "72-hour letter" which is the precursor to an administrative subpoena. Regional policy requires approval of the WHD regional office and the Office of the Regional Solicitor prior to the use of this letter and the investigation case file must document those approvals. I found no such documentation in the case file documents disclosed by DOL.

Conduct of Investigators:

Journey-level (GS-12) investigators are expected and required to conduct investigations in a neutral fashion and independently except in rare situations approved by the district office manager and usually by the regional office. An example would be a task force investigation. Notwithstanding this long established policy two (2) investigators conducted this investigation as an unannounced, surprise investigation which appears to have been done as part of an overall strategy of intimidation of a small employer – approximately 8 to 10 employees in total with only 4 or 5 employees per shift – with no history of prior contact with the WHD, much less a history of violating the FLSA. Allegations of child labor violations affecting health or safety would justify an unannounced investigation, but not one requiring two GS-12 investigators.

In conducting interviews with employees of Meers present at the time the WHD investigators arrived I heard that employees were threatened by the words and actions of the investigators. One employee was told he could be charged with obstruction and put in jail. Another told in his interview that if any of his responses were untrue he could be charged with perjury. Another employee, a server who depends on tips from customers for a portion of her wages, asked to not be interrupted from her duties for an interview because it would cause her to lose earnings, was answered with insistence from the investigators that she stop work for an interview. Each of these actions and statements by WHD investigators are contrary to agency policy and training because they are intimidating, interruptive of the business operation and have no foundation in truth or necessity.

In my conduct of internal investigations while employed by the WHD I encountered circumstances similar to those described above, where investigators conducted themselves contrary to agency policy. In each instance the investigator was subject to disciplinary action by the agency and the employer who suffered such treatment was granted relief.

The FOH requires an employer be given a publication called "Handy Reference Guide" (HRG) at the initial conference or at the first meeting between the investigator and the employer. If an appointment letter scheduling the initial conference is utilized by the investigator, the HRG is to be enclosed in the envelope. The HRG gives the employer information including notice of their rights during the investigation. This publication was not provided to this Meers employer even though they may have been handed an appointment letter when the investigators walked into the business. The further irony is that the appointment letter

actually lists the HRG as being an attachment to the appointment letter. The HRG was not provided to this employer until they retained counsel and a meeting was held with the WHD investigators in counsel's office. Intentionally withholding the HRG publication from an employer under investigation restricts their knowledge, particularly an employer who has never had contact before with the WHD, and places them at a distinct disadvantage and subjects them to intimidating tactics.

Findings and Conclusions of the Investigation

According to the redacted copy of the investigation narrative report provided to me the lead investigator alleged violations of the FLSA. She asserted violations of the minimum wage, overtime, recordkeeping and child labor sections of the law. Below I will address each of these sections separately.

Minimum Wage:

The narrative report indicates in the summary of violations that the employees were sometimes paid on a cash basis. In other words, the report finds that payment by cash is a violation of the Act. To pay an employee in cash is quite simply not a violation of the FLSA. There is nothing in the Act prohibiting an employer from paying wages in cash, actually employers may pay wages by utilizing a debit card. Yet, the investigator portrays this employer in a negative light for sometimes paying cash wages.

The narrative report alleges that short rest breaks of less than 20 minutes were deducted from hours reported on the timecards. This practice, while clearly wrong, would violate the minimum wage requirements of the FLSA only if it caused the employee to receive less than $7.25 per hour for their actual hours worked. In other words, subtracting time taken for short smoking breaks, 5 to 10 minutes, is prohibited, but does not always result in a monetary violation, but rather may constitute only a recordkeeping violation. My interviews reveal that smoking breaks were not always deducted even when taken. Nevertheless, the back wage computation sheets incorrectly assert this violation and compute back wages with regard to all employees, even those who did not smoke and for smokers even when deductions from their timecard could not be substantiated.

Another alleged violation of the minimum wage regards incorrect rounding of hours on the timecards. I was able to examine only a few timecards and it appeared some had been tallied or totaled incorrectly. This likely varied depending on the person tallying the time – at least 3 different people performed this function – yet the violation is asserted across-the-board. If this actually occurred with regard to a timecard it should be remedied, but the timecards do not reflect time taken for bona fide meal breaks of over 20 minutes, which, when considered and factored into the tally of hours worked, could completely negate any failure to add up the hours worked correctly. That is the adding in of hours worked which were omitted due to incorrect rounding of hours could be offset by the subtraction of hours

not worked due to a meal break which heretofore were included in the total of hours worked by the affected employee.

It is alleged that some compensable hours worked were performed by volunteers who were paid no wages and are due the minimum wage ($7.25) for the hours they worked. This assertion ignores evidence in the file that these individuals received tips. If this allegation is true then the individual is due $7.25 per hour less the amount of tips received. The case file contains back wage computations based on this alleged violation which improperly omit the tips.

Finally, there is an allegation that tip credit was mishandled and resulted in minimum wage violations. It appears the (former) Meers CPA utilized some IRS-approved method of determining tip income for employees receiving tips. Instead of recording the amount of tips as reported by the employee, the CPA took a percentage of sales (12%) as the amount of tips received. However, I found no evidence that employees failed to receive tips sufficient to bring them up to the full minimum wage ($7.25). This was especially true since the employer paid .45 cents per hour more than required by the FLSA for tipped employees.

Overtime:

Based on my interviews with employees and deposition testimony, it appears the employer did not always pay time and one-half for overtime hours worked. However, the investigator asserts that some employees worked off-the-clock for as much as 2 hours per week or per pay period – largely due to deductions for short smoking breaks – and arbitrarily adds 2 hours of overtime to the hours worked already paid to the employee. The 2 hours appears to be an unsubstantiated number and likely inflated when considering that some employees never had time subtracted from their timecard for taking short breaks. It also ignores the fact that the employer did not deduct for bona fide meal breaks of 20 minutes or more. If some overtime pay is due employees it is certainly in amounts far less than the overtime wages due as calculated in the investigation. Further, it appears the investigator alleges that the uncounted 2 hours per pay period represents overtime hours and is due at time and one-half. In reality if any time is due it may very well be due at straight time (minimum wage) and not at time and one-half because the time due would not cause the employee to have worked more than 40 hours in a workweek. Liability, if any, for overtime would be substantially less and would not be imposed on Meers Store & Restaurant, Inc., because the alleged overtime charges were never authorized by Meers Store & Restaurant, Inc. Joe Maranto testified in his deposition that he did not know about the cash payments on the overtime and did not authorize them.

Recordkeeping:

There are clearly recordkeeping violations in this case. However, the great majority of those appear to be the result of entrusting those responsibilities to the CPA utilized by Meers. When that CPA passed away in 2014 it appears his widow destroyed boxes of payroll records at her deceased husband's business (including those of Meers) rather than

try to return them to his clients or give them to successor CPAs. This action outside the control of this employer resulted in an inability to produce all records required by the FLSA. This employer has retained a new CPA and appears to be maintaining all required records. In my 40 years of experience these types of mistakes happen and that is particularly true of employers never previously investigated by the WHD. It is also why the FLSA follows a policy of failing to seek fines or monetary penalties for employers who simply fail to maintain all records required by the Act. This is especially true in cases in which no proof is submitted to prove that the employer acted intentionally to attempt to mislead the DOL. No such evidence exists here.

Child Labor:

According to the Complaint filed by the Secretary of Labor, Meers violated the child labor provisions of the FLSA in two (2) ways: 1) They employed minors under the age of 16 for more than 3 hours on a school day and/or more than 18 hours in a school week. Any evidence of these alleged violations obtained by WHD must be in the form of employee statements and those have not been furnished to me (or to Mr. Wilkinson); 2) They employed a minor under the age of 18 who operated a meat slicer and dough mixer in violation of a hazardous order. Again, evidence of this alleged violation obtained by WHD must be in the form of an employee statement which has not been furnished.

With regard to the first alleged violation it appears to involve minors who may not have been employed by Meers or at least that issue is unsettled. If the minor involved in the alleged violation is determined to have not been an employee then there is no violation, the employment relationship being a requirement. There is agreement that minor children of Meers employees were present at the restaurant for brief periods of time when the restaurant was open for business (and their mother was working), but it is not clear whether any minor children performed any work and whether any Meers employer was aware such minors performed any work, much less whether they suffered or permitted such work.

In the deposition testimony, it was clear that the dough mixer allegedly used by a minor under the age of 18 was not operable during the period of time covered by the investigation. If that information is correct then the second alleged violation mentioned above is called into question. It should be noted that the alleged violations of the child labor provisions of the FLSA resulted in civil monetary penalties being assessed and that a separate administrative proceeding will determine the appropriateness of those assessed CMPs. The alleged child labor violations have nothing to do with alleged back wage claims asserted by DOL.

Liquidated Damages:

The FLSA provides that liquidated damages in an amount equal to back wages due employees shall be assessed against an employer. However, in cases where an employer

can show a good faith effort to comply with the law, liquidated damages are not to be assessed. In this investigation the WHD assessed liquidated damages even though aware that this employer relied on the advice of a certified public accountant in the operation of the business. They depended on that advice to keep them in compliance with all applicable state and federal laws. In this particular instance Meers had been operating according to the advice of the CPA for over 30 years with no hint that they were not in full compliance – no contact by the WHD nor any private actions against them by employees as is available under the FLSA. After 30 years it seems understandable that an employer would assume the advice of the CPA was reliable and such reliance constitutes good faith.

In my former position as enforcement director for the WHD, I observed it was common practice to allow a good faith defense to stand when asserted by an employer who could give evidence that they operated their business relying on guidance from a CPA. In my opinion this employer is entitled to a good faith defense.

Summary:

In his Complaint the Secretary of Labor is seeking to recover over $181,000 in back wages and an equal amount in liquidated damages for a total of more than $362,000 from both Defendants. In my opinion if every single allegation made by the DOL could be substantiated the computation of back wages attributable to those violations, if correctly done, would be substantially less than $181,000. Furthermore, any such recovery cannot come from the corporate Defendant. The computation of back wages contained in the case file is not justified by the application of the FLSA nor is it compliant with the policy of the WHD. My experience tells me the computation was intentionally designed to be punitive and was done in an effort to bring this employer into a submissive posture at the negotiation table – a tactic I have unfortunately seen before during my tenure with the WHD. Additionally, any true back wage liability should not be doubled by liquidated damages in these circumstances, i.e. a first investigation of an employer who relied on the advice of a CPA. Finally, the liability, if any, cannot be imposed on the corporate Defendant.

Respectfully submitted,

*Randall G. O'Neal* (signature)

Randall G. O'Neal
Wage and Hour Consultant/Expert Witness

7 of 7