

U.S. Department of Labor
Wage and Hour Division
Lawton Field Office
410 SW 5th Street, Suite, 311
Lawton, OK 73502
(580) 357-3794

November 20, 2014

Delivered via U.S. Mail *give to Roland Cunningham and Mr & Mrs J. Maranto*

Meers Store and Restaurant, Inc.
Margaret and Joseph Maranto, Owners
26005 State Highway 115
Lawton, OK 73507

*Walk in 11/20/2014*
*WHI Masters & WHI Arnold*

Re: Wage & Hour Investigation

Dear Mr. & Mrs. Maranto,

The Wage and Hour Division (WHD) of the U.S. Department of Labor is responsible for administering and enforcing a number of federal labor laws, including the Fair Labor Standards Act (FLSA).  This letter is to inform you of the Agency's visit your establishment for an initial conference to determine your compliance with the FLSA. The enclosed pamphlet briefly describes the FLSA.

Authority for this investigation is contained in Section 11(a) of the FLSA.  Section 11(a) states, "The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter or which may aid in the enforcement of the provisions of this chapter."

The normal procedure is to hold an opening conference with a representative of the company, check certain records for a two-year period, interview a representative number of employees, and hold a closing conference to discuss the results of the investigation.

In order to conduct the investigation with as little disruption to your business operations as possible, please have available for inspection, all documents providing the following information for the last two years, ending with your last completed payroll:

    (1) Names and contact information of all business owners and company officers (e.g., President, Treasurer, Secretary, Board of Directors and other Corporate Officers) along with a company organizational chart if you have one;

    (2) Legal name of the company and all other names used by the company (e.g., "Doing Business As" names); additional businesses, companies, and establishments in which Joseph and/or Margaret Maranto holds any interest.

    (3) Records demonstrating your gross annual dollar volume of sales. Please provide these records for the **past four years;**



0549

*D 72a*

(4) A list of all employees at this location with their address, hire and termination dates, hourly rate or salary, descriptive job title, shift, and whether you consider that employee exempt from overtime for all current and former employees for the past three years;

(5) Payroll and time records from **12/01/2011 to present,** including a copy of the most recently completed payroll;

(6) Birth dates for all employees under age 18 who worked during the past 36 months;

(7) 1099 forms and contract documents with any independent contractors, subcontractors, or day laborers at this establishment;

(8) Federal Employer Identification Number (FEIN); and

(9) All applicable information regarding Government Contract work including; copy of contract(s) and/or sub-contracts.

We request that you have all of the listed documents available pursuant to the authority contained in Section 11(a) and (c) of the FLSA and in Part 516 of the Code of Federal Regulations.

**You may provide the documentation electronically.**

Per section 15(a) (3) of the FLSA, you are prohibited from retaliating against any person who files a complaint with the Wage and Hour Division or who cooperates with a Wage and Hour Division investigation. You are also prohibited from retaliating against your employees for accepting payment of the wages owed to them or from requiring your employee to return or decline payment of the wages owed to them.

Every effort will be made to conduct this investigation expeditiously and with a minimum of inconvenience to you and your employees. However, please note that the above is not intended to be an exhaustive or final list of records to be examined.

If you are unable to be present on the date and time indicated, you may designate a representative to act on your behalf. Additionally, should you or your representative be unable to attend the scheduled meeting, please notify me as soon as possible but no later than the preceding business day.

If you have any questions, feel free to call me at (580) 357-3794.

Sincerely,

Cheryl L. Masters
Investigator

Enclosures:
Handy Reference Guide, FLSA
Fact Sheet #44
Fact Sheet #77A
Fact Sheet #28D
WH-1261 – 29 CFR 516
WH-1318 - FLSA

*Added rental property info and info for business bank only $$ $\varepsilon\varepsilon$ ... ... ... hand delivered @ walkin*

## U.S. Department of Labor

Wage and Hour Division
215 Dean A. McGee Ave. Rm 318
Oklahoma City, OK 73102
405-231-4158

01/23/2015

Meers Store and Restaurant, Inc.
Attn: Mr. Robert S. Lafferrandre
1109 N. Francis Avenue
Oklahoma City, Oklahoma 73106

~ Hand not Requ.. ed
by 1/23/2015 [hm]

SUBJECT:    Wage and Hour Investigation

Attention: Robert S. Lafferrandre

The Wage and Hour Division is responsible for administering and enforcing a number of federal laws involving labor standards. In this regard, Investigator Masters has been assigned the task of conducting an investigation of Meers Store and Restaurant, Inc. under the Fair Labor Standards Act of 1938 (FLSA), to determine its compliance with the law. In order for the Investigator to proceed, it is necessary that we examine certain records.

As you were previously notified, the authority of the Department of Labor to conduct such investigations is contained in section 11(a) of the FLSA, 29 U.S.C. § 211(a), which provides that:

> The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter or which may aid in the enforcement of the provisions of this chapter.

This authority has been affirmed by the Supreme Court of the United States. See Oklahoma Press Publishing Company v. Walling, 327 U.S. 186 (1946); Donovan v. Lone Steer Inc., 464 U.S. 408 (1984). The FLSA also provides for the issuance of subpoenas to support such investigations.

Federal regulations require employers to keep certain records available for inspection and transcription by the Wage and Hour Administrator or a duly authorized and designated



EXHIBIT

C

representative.  See 29 C.F.R. Part 516.  Records located off-site at a central recordkeeping office shall be made available within 72 hours, following notice from the Administrator or a duly authorized and designated representative.  See 29 C.F.R. § 516.7.  Section 516.2(a) and 516.5(c) of the Code of Federal Regulations indicate the items that you are required to maintain and that may be inspected during the investigation. **Failure to comply with these regulations is in itself a violation of the law.**

We have requested the necessary records on multiple occasions both verbally and in writing. The records were requested on the following dates:

> 11/20/2014
> 11/25/2014
> 12/09/2014
> 01/06/2015
> 01/23/2015

## You have failed to provide them.

On 01/28/2015, you must have available for inspection at 410 SW 5th Street, Lawton, Oklahoma 73501, all records listed below providing the following information for the Meers Store and Restaurant, Inc.:

(1) The gross annual dollar volume of sales for the past four years, 2011, 2012, 2013, and 2014;

(2) A list of all employees employed in the past three years with their address, hourly rate or salary, start date of employment, end date of employment (if applicable), descriptive job title, and whether you consider that employee exempt from overtime;

(3) Time and pay records, time cards, time sheets, payroll registers, cash payment records, gratuity reports, payroll journals, and any other documents accounting for time records for and payments made to the employees for the period of January 2nd 2012 to January 5th 2015;   no records at all for 9/5/14, 9/20/14, 10/5/14, and 11/5/14 check dates

(4) Birth dates for all employees, including bussers and "volunteers," under age 18 who worked during the past 36 months;

(5) 1099 Forms and contract documents with any independent contractors, day laborers, or subcontractors at all establishments;

(6) W-2 forms for each employee for the past three years; and

(7) Employer's expenses for the rental property at, 26005 State Highway 115, Lawton, Oklahoma 73507, to include annual taxes paid, utilities, insurance, maintenance fees, etc.

**This is to be considered your final written notice to submit the requested information to Wage and Hour Investigator Cheryl Masters by 01/15/2014 4:00 PM CST.  You may contact WHI Cheryl Masters at 580-357-3794 to discuss delivery of the documents requested.**

**Your failure to respond to this notice and/or otherwise provide the records requested may result in additional action, including the issuance of a subpoena, to secure the information relevant to this investigation.**

You should also be aware that per section 15(a)(3) of the FLSA, you are prohibited from retaliating against any person who files a complaint with the Wage and Hour Division or who cooperates with a Wage and Hour Division investigation.   You are also prohibited from retaliating against your employees for accepting payment of the wages owed to them or from requiring your employees to return or decline payment of the wages owed to them.

Every effort will be made to conduct this investigation as expeditiously as possible and with a minimum of inconvenience to you and your employees.  If you have any questions regarding the above please contact me at 405-231-4158

Sincerely,

Mike Lonesky
Assistant District Director

Publications Provided

WH-1282 - HRG

WH-1261 - CFR 516, FACT SHEET #21

WH-1210 - CFR 531

WH-1312 - HOURS WKD CFR 785, FACT SHEET #22

WH-1262 - OT, CFR 778, NON TECH WH-1325, FACT SHEET #23

WH-1330 - CL 101, FACT SHEET #2A, #13, #58

# Expert Witness Disclosure

**Randall G. ( Randy) O'Neal**
**Wage and Hour Consultant**
**1410 O Shannon Lane**
**Garland, TX 75044**

Professional Summary

| | |
|---|---|
| Wage and Hour Consultant<br>Garland, Texas | 2015 - Present |

Provide advisory and consulting services related to compliance with the Fair Labor Standards Act (FLSA) including exempt vs non-exempt determinations, federal prevailing wage requirements under the Davis-Bacon Act and the Service Contract Act, and other federal statutes. Provide training to client's managers and employees regarding compliance with federal labor laws and assistance with respect to investigations by the Wage and Hour Division of the U.S. Department of Labor. Conduct compliance audits to assist clients and counsel in assessing risk related to current employment practices and formulating steps to effect full compliance. Assist plaintiff and defense attorneys with respect to opinions and expert testimony. Over 40 years of DOL experience including 20 as head of enforcement in one of five federal regions.

| | | |
|---|---|---|
| Regional Director of Enforcement | U.S. Department of Labor 2004-2015 (retirement) | |
| Southwest Regional Office, Dallas, TX | Wage and Hour Division (WHD) | |

Responsible for enforcement of all Acts administered by WHD in an 11-state area, in essence supervising the conduct of the thousands of investigations carried out by more than 200 wage and hour investigators. Directed management review of enforcement activities, identified and resolved technical and procedural issues in the 11 district offices and reviewed systemic factors related to program effectiveness. Served as operational link between WHD and the Regional Solicitor of Labor. Served on the National Enforcement Policy Advisory Committee and served as Criminal Enforcement Coordinator.

| | | |
|---|---|---|
| Director of Regional Operations | U.S. Department of Labor | 1994-2004 |
| Southwest Regional Office, Dallas, TX | Wage and Hour Division | |

Performed the same duties and had the same responsibilities regarding enforcement as the director of enforcement position which was created in 2004. Additionally, supervised all staff in the regional office except those working directly for the regional administrator, including staff handling the prevailing wage surveys; back wage disbursements, civil monetary penalties, program analysis and all enforcement related matters. In 2000 was named the Regional Manager of the Year.

| | |
|---|---|
| Director of Government Contract Enforcement | U.S. Department of Labor 1990-1994 |
| Dallas Regional Office | Wage and Hour Division |

Supervised all enforcement work related to enforcement of the Davis-Bacon Act, the Davis-Bacon Related Acts, the Service Contract Act and the Contract Work Hours and Safety Standards Act. Also supervised the conduct of all prevailing wage surveys carried out with regard to the Davis-Bacon Act in a 5-state area until 1994 when the area was expanded to include 11 states.

| | | |
|---|---|---|
| Wage and Hour Investigator | U.S. Department of Labor | 1977-1990 |
| Tulsa District Office | Wage and Hour Division | |
| | | |
| Dallas District Office | | 1975-1977 |

Independently conducted a wide range of investigation under all Acts administered and enforced by the WHD. In 1987 received the Department of Labor Distinguished Career Service Award. Handled numerous complex investigations that were ultimately litigated by the DOL, specialized in government contract law investigations and was detailed to several Federal installations such as the Johnson Space Center (NASA) to individually handle extremely sensitive cases. In 1983 named the Federal Employee of the Year by the Tulsa Federal Executive Association.

Education

BS in Business Administration
Oklahoma State University - 1972



EXHIBIT

L

1 of 1

July 5, 2016


Joe Maranto
Meers Store and Restaurant
26005 OK – 115
Lawton, OK 73507


Dear Mr. Maranto:


I'm writing because I read recently about the litigation brought by the U.S.
Department of Labor against your business.  I was born and raised in Altus and am
familiar with your restaurant, having eaten there on several occasions. More
importantly I recently retired from the Wage and Hour Division of the U.S.
Department of Labor (DOL), the agency which investigated your business, and
currently work as a consultant, assisting employers with Federal labor law.

After spending more than 40 years with the Wage and Hour Division, I retired as the
head of enforcement for the 11-state region, which includes Oklahoma.
Additionally, I was responsible for all the wage and hour litigation such as the suit
filed against you by the DOL.  I am very familiar with what you are going through
and what probably lies ahead, but was not personally involved in the investigation
of your business or the current litigation.  Consequently, I am not ethically barred
from working in your behalf.

I am not an attorney, but would certainly be able to assist you in your encounter
with the DOL.  I read in the newspaper that you have an attorney from Oklahoma
City.  It would be my pleasure to work with them as appropriate or simply to consult
with you.  My rates are much less than those for most attorneys – please contact me
if you would be interested in discussing my involvement with this matter.  I
certainly wish you well.



Sincerely,



Randall G. O'Neal
Wage and Hour Consultant
1410 O Shannon Lane
Garland, TX 75044
972.983.3364



Summary of Employee Interviews

(1) Rowland Cunningham  ($37,289.17)
- Meal breaks are 20-30 minutes b/c he goes home (next door)
- Paid for all hours
- No work time paid for in cash
- Money in envelope was "bonus" for busy days/weekends like holidays
- Knows nothing about any appointment letter - WHI walked in on him
- Margie totals time cards
- Threatened w/ jail for obstruction if he lied

(2) Justin Grohn  ($3,395.02)
- Paid $M until DOL audit, then bi-wkly
- Twilla totaled time cards
- During 2012 + 2013 clocked out for smoke breaks - not really enforced, aimed at only a few people who didn't cooperate w/ policy
- During 2012 + 2013 did not receive T² for OT - did receive some cash also rec'd cash for bonus
- During 2012 he didn't work OT, but did some in 2014 only mid-May to mid-Oct
- Contacted recently by Cheryl
- Told at start if anything untrue he could be charged w/ perjury



EXHIBIT

tabbies

_P_

(3) Brian Hausheer  ($14,313.??)
- Post 2 yrs - 5 days/week; before that 6 days/week
- Twilla totaled time cards
- All hours worked were counted + paid — rare OT
- Rec'd T² for OT (has check stubs)
- Doesn't clock out for short breaks
- Not paid in cash except bonus (Thank You) as a gift from owner
- Not interviewed until Sept '16, got letter from Cheryl + called # provided, talked to Cheryl 5-10 minutes; she asked same ?'s as RGO - told her OT was paid @ T² + money in envelopes was gift

(more)

1 of 6

(4) April Taylor   ($7146.00)
- Gaps in employment since starting in 2/12
- Server w/ few shifts as cashier   ($2.58 + $7.50)
- Short breaks never there - don't clock out (smoker) + doesn't think she ever had time deducted for smoke break
- Rare OT, thinks paid @ $T^2$
- WHI tried to lend her w/ their ?'s
- Cheryl later interviewed her son Dakota @ McDonald's + Cheryl stopped her from correcting an erroneous statement made by son

(5) Lisa Wiederman  (        )
- Daughter of Rowland Cunningham
- Now does payroll (and is a server)
- Twilla totaled time cards (never had a problem)
- Paid for all hours worked
- No deductions from her time card - No OT marked
- Never rec'd money in an envelope
- WHI insisted she leave her duties for interview when she didn't want to

te    M/M Maranto:
- Smoke breaks (extra/lost) show up as punches on back of time card, but only deducted for extended (large) breaks, not 3 to 5 minutes
- Smoking deduction policy was in effect entire inv. period

2 of 6

| EMPLOYEE NAME | ALLEGED AMOUNT OWED $ |
|---|---|
| X Rowland Cunningham | 37,289.17 |
| Twilla Nieto — | 30,223.00  *6633 Nw Shroyer Rd 07350* *Lawton* |
| Courtney Chambers  *Step daughter of* | 26,796.00 *6633 Nw Shroyer Rd OK 73507* *Lawton* |
| Terry Bright  — *in Cache* | 26,510.80 *108 6 Ave  Cache OK 73527* |
| Dusty McClung - *current to* | 24,128.00 *204 D Cache Rd* *Lawton* *73505* |
| Marcus Mullennix - *Nieto's / Nieto sanain in law to* | 17,504.30 *7510 Tango Rd Apt 2 73505* |
| X Brian Hausheer | 14,313.58 |
| Charles Fixico | 11,882.70 *Rd.* *Lawton* *73507* |
| Kristopher Sovo | 10,237.50  *No info* |
| X Justin Grohn | 10,098.92 |
| Jacob Lambert — *bro of* | 7888.00  *info* |
| X April Taylor | 7146.00 |
| Dakota Taylor | 6974.50  *73...* |
| Chambree Thompson | 6942.60  *OK  73062* |
| Jeffery Dennison | 5154.76 |
| X Lisa Wiederman | 5130.00 |
| Claude Prewitt | 5022.00  *No info* |
| Brittany Estep (McCullar) — | 4815.50  *OK 73505* |
| Paula Snare | 4815.50 *Medicine Park 73557* |
| Heike Organ | 4684.96 *Sunset OK 73538* *Elgin* |
| Tony Espinosa | 4580.56 *No info* |
| Joshwa Snow | 4437.00 *No info* |
| Beth Petty | 4422.60 *PO Box 274, Apache 73006* |
| Miranda Starr | 4121.46 *408 NW 57th, Lawton 73505* |
| Haylie Lawson | 4045.50 *6705 SW Bainbridge Ave 73505* *Lawton* |
| Matthew Marshall | 3496.50 *No info* |
| Tyler Mays | 3393.00 *No info* |

*3 of 6*

| | | |
|---|---|---|
| Steven Ross | 3341.74 | No info |
| Macy McKay | 3014.56 | No info |
| Andrea Ward | 2675.26 | No info |
| Zachery Plumbtree | 2530.10 | 10388 Meer Porter Hill Rd, Lawton 73507 |
| Carlos Chalepah | 2466.46 | PO Box 687, Corneau 73015 |
| Larry Osborne | 2466.46 | No info |
| John Enriquez | 2401.20 | No info |
| Keef Wetzell | 2342.48 | 147 Montgomery R Lawton 73507 |
| Greg Bergey | 2335.96 | No info |
| Neika Anderson | 2329.42 | |
| Glenda Mays | 2101.06 | |
| Charla McClung   591-2479 | 2009.08 | |
| Dale McClung - Son | 2009.08 | |
| Brandon Davis | 2000.70 | |
| Matthew Freeman | 1918.36 | |
| Dale Sikes | 1918.36 | |
| Deldra Wash | 1843.74 | |
| Michael Owens | 1781.32 | |
| Mike Fullen | 1761.76 | |
| Jeremy Tsotoke | 1507.28 | |
| Cody Mays | 1301.44 | |
| Elizabeth Clark | 1233.22 | |
| Brett Scott | 1233.22 | S Brownwood, 73501 |
| Michael Simmons | 1200.60 | No info |
| Clarence Woody | 1181.02 | |
| Ken Parduc | 1096.20 | No info |
| Jeremiah Bond | 1076.62 | No info |
| Monika Tanner | 1003.68 | 8625 NW Lawton 73507 |

4 of 6

| Name | Amount | Notes |
|---|---|---|
| Stephanie Turner *Mother of Charlene* | 1003.68 | No info |
| Chris Boyd | 959.18 | No info |
| Carlos Espinosa | 861.50 | No info |
| Kaitlyn Turkelson | 801.82 | No info |
| Gaige Shiplet | 743.86 | 110 Buffalo DR *Eagle 73552* |
| Christian Gardner – current ee | 723.70 | 332 NW Meers Porter Hill, 73538 *Elgin* |
| Justin Collins | 645.96 | No info |
| Lloyd Howell | 627.76 | 411 Grassland, Indiahoma 73552 |
| Misty Lee Garland | 603.86 | |
| Darlene McCoy – MJ | 593.82 | |
| Anthony Blue | 587.26 | |
| *Miranda* Daughter Starr | 580.00 | |
| Hannah Anthony | 540.62 | |
| Stephen Cullihan | 495.90 | |
| Jessica Lambert | 469.80 | |
| Tammara Bazor | 342.86 | |
| Dustin Tucker | 339.90 | |
| Lacy Jones | 223.04 | |
| Natalie Matthews | 208.80 | |
| Jessica Waller | 192.52 | No info |
| Nicholas Hernandez | 189.22 | |
| Jesse Snare | 163.12 | PO Box |
| Kolton Nading | 143.56 | No info |
| Larry Oliver | 130.50 | No info |
| Katherine Bledsoe | 117.46 | 1135 NW Carroll DR 73507 *Lawton* |
| Rebekah Crowell | 117.46 | No info |
| Alexander Garland | 104.40 | No info |
| Gina Perry | 104.40 | No info |

5 of 6



| Chris Jakubiszyn | 91.36 No info |
|---|---|
| | |

EXHIBIT
Q

11/15/16   ROI          Rowland Cunningham                    580. 429- 8051

Currently kitchen manager - employed about 10 years

Records time on time sheet - punch a clock twice a day, to
     start the day and end it
Meal break is 20-30 minutes where he goes home - next door -
     to eat, relax + check on wife who has health issues.
Both his daughters have worked in the restaurant and so did
     wife Sylvia, but years ago.

Kept his time tallied in his head, but Margie totaled time or
     hours worked on the timecards. He was paid for all hours
     worked - no reductions - if they seemed off in comparison to
     hours kept in his head he would ask about it and a review
     would answer all questions. - Works 5 days per week.
If he wants something to eat there is no charge except for
     steak which is half price

Doesn't work overtime much, but when worked paid at time and
     one - half. He was paid $12 per hour until the labor audit
     then went on salary. Payday is every other Monday.
     No work is paid for in cash and wasn't during the time
     covered by the labor audit.
He did receive money in an envelope for a bonus - would
     typically come after really busy days or weekends like
     4th of July, Labor Day - this was discretionary - up to Joe.
     Joe gave gifts of cash to employees in envelopes.
During the labor audit the investigators never said anything about
back pay. They played good cop - bad cop with the brown -
haired one being bad cop. I had no contact with the DOL
women before they just walked in on me in November 2014,

2

③

## Rowland

I was doing some clean-up and they walked in and flashed their badges — I thought they were cops looking for somebody that worked for us. I never heard anything about them sending an appointment letter. They said they wanted to talk and both of them asked me questions like who all works here. It was interesting they asked me about envelopes and when I said I didn't know what they meant they got mad. Dark-haired woman said "If you lie to me I'll charge you with obstruction" — basically calling me a liar. She told me I could go to jail. I mentioned to them my wife was ill/sick and I needed to care for her — Cheryl said "How are you going to do that if you're not working!" I took that to mean if she had me put in jail — I wouldn't be able to work and support my wife and pay her medical bills.

Part of my pay is living next door — Cheryl called that a "sweet deal" — she seemed to know all about my work situation. Don't remember her asking about hours, but she asked where the schedule was posted. I don't recall questions about my pay — she just wanted to know about the envelopes

3

Rowland

Work
580. 429. 8051

Period - almost 10 yrs!
Kitchen Mgr.

Time - Clocked in + out; 2 punches a day
Go to house next door + eat 20-30 minutes

Wife Sylvia was waitress - befor DOL inv. was period
of emp. - Lisa is my daughter - both daughters
worked for.

- Margie added time; dont know how she totaled
- Added hrs in my head - I always get pd
for all my hrs or if a mistake they would
fix it
Work 5 days / wk - closed Tues + Wed

- If ees eat here - grab something to eat They dont
pay

- Sometimes wk over 40, not regularly b/c me
had more people
OT pd @ T²
$12 / hr before went on salary

Payday is every other Monday - pd by check
→ no hrs pd for by cash

I did get $ in envelope but it was a bonus
from Joe for 4th July, Labor Day - holiday

Never said anything about back pay
Gomdron - bad con

①

4

Margaret                                                        Joe gone gifts—
                                                                    in envelopes but

No contact before they walked in
        Came about 9 am
              in Nov '14
        No rec'd appt ltr. —


Rowland — doing clean-up, showed their badge; Thought they were
        cops wanting one of our ees for something
        Both talked to him;
?'s — who works here; asked about the envelopes — told her I
        don't know what you mean;
        "If you lie to me I'll charge you w/ obstruction;
                that was Cheryl — basically called me a liar
        Told me I could go to jail

Wed.                Back room for interview
Lisa does
payroll
bi-weekly                    [circled] he's a was server
every other
Monday
        ↗ Kitchen; fill out sch 14-15 ees; assign their work
                              pd hrly them; may have gone
Rowland — Told them my wife was sick & I needed to
        care for her — Cheryl said how are you going
        to do that & you're not nearby

        Part of my pay is living next door — she called that a
        "sweet deal" — she already seemed to know that;
        Don't remember to asking abt hrs, but asked
                about where the schedule was posted
        Pay — don't remember any ?'s about my pay
                how pd, how much, etc — nothing

                She just wanted to know about the envelopes

5

11/15/16           Justin Grohn          580.483-5720

I started work here in 2012, left for 2 months a few months ago, then came back. I have always worked in the kitchen as a cook - now I'm night manager and cook. My schedule is Mon + Thurs from 3 pm
Friday from 2 pm
Sat and Sunday from 1 pm and I always stay until I close up. I've always punched a time clock - in when I come to work and out when I leave. The time clock keeps "military time", hundredths of hours.

I have always kept track of my time, but Twilla totaled the time cards for the payroll. We were paid on the 5th and 20th of every month, but after the DOL investigation we were paid every 2 weeks.

Meals are free unless you eat a ribeye then it's half-price. I just grab a bite as I go, maybe take 5 minutes or so to eat something.

There was a time in 2012 and 2013 that we clocked out for smoke breaks or that was the policy. They were not strict about it, nobody enforced it really. I've been told to go outside for a break, to get some fresh air and told to not punch out. But, we had a few people who were always outside smoking when we needed them - they stayed outside for a long period of time and the policy was aimed at controlling them. The truth was those same poor employees were the ones who decided whether to actually clock themselves out to go smoke - they usually didn't because no one had time to check up on them. Nobody clocked out other employees

6

②

Grohn

even if they knew they were outside smoking. Employees get around the policy. It meant to accomplish something by impressing on the smoking employee that they were taking too many breaks or were smoking too much when there was work to do, but it would have taken too much time and effort to actually police it, so the policy never really worked.

Over the years I've been here I have worked some overtime and back in 2012-2013 I don't think I always got time and one-half for it. It didn't bother me much because I didn't expect to always get time and one-half. Also, back in 2012-2013 I did receive some cash for working over 40 hours. It was paid in cash at straight time, it was usually in an envelope. But, the owners also gave us cash for a gift in an envelope, like after a Memorial Day or Labor Day weekend - that was not for overtime, but for just doing a good job during rush periods.

In 2012 I don't remember working any overtime. But, in 2013-2014 during the summer I sometimes would get 10 to 12 hours of overtime in a semi-monthly pay period. I knew how to handle so many duties it was easy for me to work extra hours. Never worked overtime in the winter.

Our busy season is mid-May to mid-October, our staffing depends on how busy we are - they hire more people to work when we're busy.

I don't receive tips, just work by the hour.

My brother Larry worked here at the restaurant before me.

7

③

## Grohn

Back in late 2014 2 women from DOL came to the restaurant. I think I was the second employee they talked to. One asked questions, or most of the questions, and the other one wrote out a statement. They never showed me any badge or ID, just said they were from the Department of Labor. Before I really understood who they were and what they were doing, Cheryl told me "Before we ask you anything I want you to know if you tell us any thing untrue you could be charged with perjury". That really upset me, then the way the questions were structured made me feel like they were looking for certain answers.

They didn't ask me if I wanted to read what they wrote, just showed me where to initial where they had made a mistake and then had me sign it.

A few months ago I got a call from Cheryl and I called her back. She said she was in a meeting and couldn't talk, but wanted to meet me again and talk more because we're getting closer to court. I haven't heard back from her and haven't met with her.

8

11/15/16   ROI        Brian Hausheer

I work in the kitchen, all the way toward the back. Basically, I get the food ready — my primary job is meat grinding. But, I also smoke the meat, make the homemade ice cream, make the mashed potatoes and keep the kitchen, or at least a good part of it, clean. At times I have helped wash dishes, bussed tables and done whatever needed to be done. We get so busy with customers standing in line that you wouldn't believe it.

I started here in April 2012 in the kitchen. When I started, it was 6 days a week, but for the past 2 years or so it has been 5 days a week. My hours are reported on a timecard. I punch in at the beginning of the day and out at the end. All my hours worked have been counted and paid for. Twila added the time up on the timecards. I have had weeks that I worked over 40 hours, but not usually. I started at $7.25 per hour, but now I make $9.50 per hour. I have check stubs showing that I got paid time and one-half for overtime. I'm paid every other week.

Meal breaks occur when we're not busy — usually I don't stop working, but take short breaks and I don't clock out. I'm paid straight through from the time I clock in until I clock out. I'm paid by check, not in cash.

I have received envelopes with some cash in them which I got as a "Thank You" for sticking with the job during a period of hard work. The money was not for wages, but was a gift from the owner.

In September 2016, I received a letter from DOL and as

9

(2)                          Hausheer

the letter said to do, I called the phone number provided.
It was Cheryl's direct line and we had about a 5-10 minute
conversation. First thing she said was, "Finally, we found you.
You're a difficult person to find". All she asked me were
questions about envelopes and receiving money as a gift.
I think they interviewed everybody but me during the days
they (DOL employees) were here at the restaurant, but they
never asked to talk to me. I remember she also asked
me the same question you asked me - about overtime,
was it paid at time and one-half. I told her the same
thing I'm telling you.

10

11/15/16   RDI   April Taylor   580. 524 - 2823

I started working here in February 2012 and have come and gone during
that time to the present. Generally, I have been a server, but have
helped out in the kitchen some and have worked as a cashier on
occasion. As a server I'm paid $2.58 plus tips and as a cashier I'm
paid $7.50 per hour.

I report my time on a timecard, punch in at the beginning of my
shift and out at the end of the shift. I noted on my timecard
if I had any time as a cashier or really I would use a different
timecard if I thought about it.

I get a 5 minute break here and there, but no 20 or 30 minutes
for a meal break — I do grab something to eat during my shift,
but I don't have to pay anything for it.

Back from 2012 to 2014 I'm not sure who totaled up the time
on timecards, but I feel I always got paid for all the time
that I worked. I don't know anything about having time
deducted — I don't know how that could occur and I'm a
smoker, but I don't think I ever had time deducted for
taking a smoke break. I+ I ever had a question about my
time or my pay I could ask Margie and she would answer any
questions employees had. I didn't have time deducted, but
I did have money deducted from my pay if I wanted to
buy a tee shirt or take home food.

I usually work 4 or 5 days a week. Charla McClung was the
head waitress and she made out the work schedule, she did
that a week in advance so we would know ahead of time. I
would not get over 40 hours of work unless it was a rare
thing, maybe a worked overtime at some time, not sure. When I

②

//

Taylor

did I think I was paid time and one-half, but really I
never paid much attention to that because I was only
paid $2.58 per hour anyway and time and one-half that
would be much or make much difference. Tips is how I
made my money. Whether it was slow or busy I always made
more than $5.00 an hour in tips. I never made any report
of the tips I received back in 2012-2014. I used to get
paid semi-monthly on the 5th and 20th, but now get paid
every 2 weeks - I have since the Labor Dept. was here.
The 2 ladies from the DOL talked to me the first day
they were here. They tried to lead me to say things I didn't
mean as they asked me questions. Any time I said I don't
know, that seemed to upset them. They both seemed
pushy to me - I didn't like them. They wrote down what
I said, but when I started reading it I didn't like
the way they made it sound, even what they wrote - I
didn't even read it all - just scribbled my name at the
bottom. I did not like how they acted.
After they (DOL) were here I met the one named Cheryl
one day at McDonald's with Dakota, my son. He was about 13
then and Cheryl asked him a lot of questions then had him
read and sign his interview. Cheryl stopped me from
correcting something Dakota said that was not correct.
As far as Dakota, on some Fridays my aunt dropped him
off at the restaurant after school. Other times he would be
here 1 or 2 days during a week - maybe 10 hours total and
he would just be playing around inside or outside the building -

12

③

Taylor



he would build things out of cardboard boxes and of cause,
he would always eat while he was here - most of the food
was free, but he liked ribeyes so I would often pay ½
price for him to have one.

Dokota did not use the time clock, but he did work
some when he wasn't playing. I didn't consider him an
employee, but some of the servers would give him $5.00
out of their tips because he would help them, clear a table
or something which would give them more customers and
put money in their pockets.

13

11/15/16  ROI   Lisa Wiederman                    580. 429-8557

I've worked here in the Meers Restaurant for the past 3 or 4 years.
Started at age 16 as a server and worked until I was 19 then I
left and came back in 2014, still as a server. Now, I'm a server
and night supervisor and I've started doing the payroll.
My time as a server has involved typical waitress duties. I have
completed a timecard - punched a time clock — with 2 punches
each day. I punch in when I get to work and punch out
when I'm finished. Twilla Nieto added the time up on the
timecards - we started a new week every Thursday - and she
was good at that, never had a problem. I was paid for all
the hours I worked. I was paid straight through from the
time I punched in until I punched out. No time was deducted
for meal breaks or any breaks. I usually worked 25 to 30 hours
a week, I don't think I ever worked over 40 hours. The kitchen
employees were more likely to work overtime. I was paid $2.58
per hour plus my tips. Tips were less in the winter because business
is slower but we have fewer people working during the winter. I
made an average of more than $5.00 an hour in tips so I always
made more than $7.25 per hour between my $2.58 and the tips.
The only deductions from my pay was when I bought a tee shirt,
not food, food was all free except we pay 1/2 price for ribeye
steak.
The busy season here is from mid-March to mid-October usually.
We had more employees during the busy season to stay up with the
number of customers and the amount of work. I was always
paid by check, never received any cash other than my tips. I
never received money in an envelope from Mr. or Mrs. Maranto;

14

② Lisa

that happened sometimes with the kitchen workers and it seemed
only fair to me since they don't receive any tips.
I remember when the 2 woman from the Department of
Labor were here. We were busy and I had lots of customers
that I was serving. They insisted that I stop work and talk
with them which upset me because it took me away from my
tables and cost me money in the tips I could have been
making. They seemed to know that Rowland Cunningham is
my dad and they asked me a lot of questions about envelopes
they said employees received, they asked mostly about that.
I told them I never received any envelopes and I could
tell they didn't like my answer.

I think the 2 ladies from DOL were here all one day
and maybe came back the next day - I think that's when they
talked to me, both of them together. I heard some
employees received letters from DOL in the last month - Hannah
Anthony said she got a letter, but I never received such a
letter. Hannah is a current employee and I guess she was
here part of the time the DOL is investigating.

15

11/15   M/M Maranto

Twila, Mrs. Maranto + now Lisa total time

Smoking breaks shows on back on T.C. - some out there
30 minutes; in effect entire inv. period;
This was punched on the back side of the card - only
deducted for large numbers of minutes - not for
3-5 minutes;

Mrs. R - Servers did not pull extended shifts
as cashiers/hostesses; They simply help
the cashier by seating customers in "their"
section of the restaurant; restaurant
has 5 sections;
Only time would cashier whole day
would be if cashier didn't show up;

Courtesy to               he, she
                         but was after
to                          will now;

Who Interviewed
Ronald   Chris
Justin
Lisa

CPA
Donald L. Smith      3535
Anka    Cache Rd @ 53rd
            1414 1/4 W 52nd