IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>      Plaintiff,<br><br>v.<br><br>MARGARET MARANTO, *et al.*,<br><br>      Defendants. | Case No. CIV-15-1378-D |

**O R D E R**

Presently before the Court is Plaintiff's Motion for Summary Judgment [Doc. No. 75] filed pursuant to Fed. R. Civ. P. 56 and LCvR56.1. Plaintiff R. Alexander Acosta, Secretary of Labor, seeks a judgment as a matter of law on all claims and an order granting injunctive and monetary relief against Defendants Meers Store & Restaurant, Inc. ("Meers") and Margaret Maranto. Defendants have responded in opposition to the Motion [Doc. No. 112], and Plaintiff has replied [Doc. No. 114]. The Motion is fully briefed and ripe for decision.

This case involves claims by the United States Department of Labor ("DOL") that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, by failing to pay minimum wages to certain employees, failing to pay overtime compensation, failing to comply with child labor provisions, and failing to maintain required records. Plaintiff seeks injunctive relief prohibiting further FLSA violations, an assessment of unpaid wages and compensation owed to Defendants' employees, liquidated damages, and

a three-year period of recovery for willful violations. Specifically, by its Motion, Plaintiff seeks to recover unpaid wages of $167,843.68, and an equal amount as liquidated damages.

Defendants' opposition to the Motion is largely based on a defense to Plaintiff's claims previously asserted in a motion for summary judgment filed by Meers. By its motion, Meers sought to avoid FLSA liability by arguing that Margaret Maranto was solely responsible for adopting and implementing the alleged pay practices that violated FLSA and that she acted without knowledge or authority from Meers in committing the violations. After Defendants filed their response to Plaintiff's Motion, the Court denied Meers' motion because Meers did "not present sufficient facts or legal authority to support its position." *See* 9/19/17 Order [Doc. No. 115] at 5. In light of this ruling, all contentions in Defendants' response to Plaintiff's Motion that merely refer to Meers' motion for summary judgment or repeat Meers' *ultra vires* arguments are disregarded.[1]

Defendants also oppose Plaintiffs' Motion by submitting an affidavit of Randall O'Neal, their designated expert witness regarding wage-and-hour matters.[2] However,

---

[1] The Court's ruling was based on a lack of legal authority for Meers' defense and a finding that conclusory statements in an affidavit provided by Mr. Maranto were insufficient to support it. *See* 9/19/17 Order at 5 n.2 (citing *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1252 (10th Cir. 2017)). Similar affidavits of Mr. and Mrs. Maranto are submitted with Defendants' response brief, and are similarly insufficient. *See* J. Maranto Aff. [Doc. No. 112-1]; M. Maranto Aff. [Doc. No. 112-2]. Although the Court issued its ruling more than six months ago, Defendants have made no request to amend their summary judgment response in light of the denial of Meers' motion.

[2] The affidavit recites almost verbatim Mr. O'Neal's criticisms of DOL's investigation and findings stated in his expert report. *Compare* O'Neal Aff. [Doc. No. 112-4] at 2-10 *and* Pl.'s Mot. Exclude, Ex. O [Doc. No. 73-2] at 2-8.

contemporaneously with the Motion, Plaintiff filed a *Daubert* [3] motion to exclude expert testimony by Mr. O'Neal, and after full briefing, the Court granted the motion. *See* 3/28/18 Order [Doc. No. 124]. The Court found that Defendants had failed to establish the admissibility of Mr. O'Neal's expert opinions. *Id.* at 7. Therefore, Defendants' references to Mr. O'Neal's affidavit and arguments in opposition to summary judgment based on his opinions are also disregarded.

**Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by

---

[3] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts** [4]

Meers is a corporation that operates a restaurant and, during the relevant time period, employed 84 individuals identified in Exhibit A to the Complaint [Doc. No. 1-1] as servers, hostesses, cooks, kitchen staff, and bussers.[5] Margaret Maranto is a part-owner of Meers and served as its general manager together with her husband, Joe Maranto. Both Mr. and Mrs. Maranto had full management authority. Mrs. Maranto's functions included setting Meers' employee policies, hiring and firing employees, scheduling and directing their work, setting compensation, computing hours worked from time cards each pay period,

---

[4] This statement includes material facts that are properly supported and not opposed in the manner required by Rule 56(c)(1) and LCvR56.1(d). All facts properly presented by Plaintiff and not specifically controverted by Defendants are deemed admitted, pursuant to Rule 56(e)(2) and LCvR56.1(e).

[5] Defendants have taken the position that Meers did not employ bussers and that minors who performed bussing work were volunteers. Defendants provide no facts to show that the individuals who did bussing work were not "employees" as defined by FLSA. *See* 29 U.S.C. § 203(e)(1) ("the term 'employee' means any individual employed by an employer") and § 203(g) ("'[e]mploy' includes to suffer or permit to work"); *cf. Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1995) ("employee" excludes a volunteer who works "solely for his personal purpose or pleasure"); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1230-31 (10th Cir. 2018) (child workers were not volunteers under *Alamo Foundation*).

4

and communicating with Meers' accountants regarding payroll. Mrs. Maranto represented Meers during DOL's investigation and provided information regarding pay practices, record keeping, and child labor.

Defendants' employees handled goods that had been moved in interstate commerce, including time cards from Tennessee, liquid sweetener from New York, and kitchen equipment from Indiana, California, Mexico, and Italy. Meers had an annual gross sales volume of $500,000 or more for calendar years 2012, 2013, 2014, and 2015.

Beginning in November 2014, DOL investigated Meers' compliance with FLSA's requirements regarding minimum wages, overtime compensation, record keeping, and child labor restrictions. Two investigators from DOL's Wage and Hour Division, Cheryl Masters and Lindsey Arnold, visited Meers' restaurant, made written requests for payroll and time records, communicated with Meers' managers and attorney regarding requested documents, interviewed witnesses, and obtained written statements from 19 employees. Despite requests for records from the previous three years, Defendants produced time cards covering a three-month period from October 15, 2014, to January 19, 2015. These time cards were generated by a time clock used to record time worked by Meers' employees; employees were required to clock-in at the beginning of each shift and clock-out for breaks and at the end of each shift.

The investigation resulted in findings that Defendants had committed minimum wage violations affecting certain employees due to four identified policies or practices (*see* 29 U.S.C. § 206(a)(1)): 1) requiring employees to clock-out for all breaks regardless of

duration and excluding breaks, including ones less than 20 minutes, from the computation of hours worked;[6] 2) making computational errors when converting worktime on employees' time cards to a decimal number for payment purposes by incorrectly rounding fractions of hours (for example, recording 4:45 as 4.45 rather than 4.75 hours);[7] 3) failing to include bussers on Meers' payroll and paying no wages for their work (instead, allowing bussers to be paid from servers' tips); and 4) failing to pay servers a sufficient amount during the restaurant's slow season when their wages as tipped employees (who received an hourly rate plus tips in accordance § 203(m)) were insufficient to reach the minimum wage threshold.

The investigation also resulted in a finding that Defendants had violated FLSA's requirement to pay overtime compensation at one and one-half times an employee's regular rate for hours worked in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207(a)(1). Meers' payroll was administered by an accounting firm that issued employees' pay checks. Each pay period, Mrs. Maranto reported to the accountant an amount of hours worked for each employee that she computed from the employee's time card and transferred to a handwritten summary sheet, omitting any overtime hours. Mrs. Maranto then made cash payments to any employees who had worked overtime, compensating them at their regular

---

[6] Short rest breaks lasting less than 20 minutes are compensable as working time, and must be included in computing hours worked. *See* 29 C.F.R. § 785.18.

[7] The practices of having employees "off the clock" during working hours and incorrectly rounding fractions of hours resulted in wage payments below the federal minimum wage threshold for workers who were employed at or near the minimum hourly rate. These practices also caused undercounting of work hours for overtime purposes.

rates for the hours not reported to the accountant and thus not included in their payroll checks. Mrs. Maranto engaged in this practice on a routine basis during the investigation period. She also routinely destroyed the time cards and summary sheets after each pay period, except during the three-month period for which records were provided to DOL.

In addition to destroying payroll records, Defendants failed to keep other records as required by 29 U.S.C. § 211(c) and implementing regulations. *See* 29 C.F.R. §§ 516.1, 516.2, 516.4, 516.6. Defendants did not consider bussers to be employees (*see supra* note 5) so there was no record of their employment or payments they received. Defendants did not record tips received by servers. At least two employees were paid in cash only, and Defendants did not retain any pay records for these employees. Due to Mrs. Maranto's underreporting of wage information to Meers' accountants, the payroll records kept by the accountants were inaccurate. Defendants failed to keep a list of all employee names and addresses during 2012 to 2014, and did not display a required FLSA minimum wage poster in the workplace.

During the investigation period, Defendants allowed two minors to work as bussers when they were younger than 14 years old and, therefore, prohibited from working in a nonagricultural occupation. *See* 29 C.F.R. § 570.2. One of the minors later worked as a busser in violation of federal regulations restricting the work hours of children 14 and 15 years of age. *See* 29 C.F.R. § 570.35(a) (no more than three hours on school days or eight hours on non-school days, no more than 18 hours per school week, and no working past 7:00 p.m. from Labor Day to June 1 or 9:00 p.m. from June 1 to Labor Day). Another

employee who was younger than 18 years of age during the investigation period operated a meat slicer and a dough mixer on a regular basis as a primary part of his job duties, in violation of 29 C.F.R. §§ 570.61 and 570.62.

During her testimony in this case, Mrs. Maranto has admitted these errors occurred. Defendants do not dispute the facts and evidence presented by Plaintiff to establish them.[8] In fact, Defendants concede that FLSA violations occurred, but blame Mrs. Maranto for committing them. *See*, *e.g.*, Defs.' Resp. Br. at 6 ("Margaret Maranto told employees that Meers refused to pay overtime" and "Mrs. Maranto engaged in the practice of withholding some of the [wage] information instead of providing it to the CPA firm"). In deposition testimony, however, Mr. Maranto also derided FLSA's requirements, stating that Meers' employees were not entitled to receive overtime compensation or to be paid for work breaks of any duration. *See* J. Maranto Dep. 114:11-115:2, 142:2-18. Records of Meers' payroll and employee practices after the investigation period showed that many of the same FLSA violations continued to occur. *See* Masters Aff. [Doc. No. 75-1], ¶ 34.

With their brief, Defendants present evidence intended to show that they relied on the advice of Meers' accountant, Danny Delciello, to ensure FLSA compliance and to pay

---

[8] With regard to some facts, Defendants make a conclusory assertion that Plaintiff's calculations "are flawed and incomplete," which is insufficient under Rule 56(c) to dispute Plaintiff's factual assertions. *See* Defs.' Resp. Br. [Doc. No. 112] at 4 (¶ D) and 9 (¶ O). Defendants also make a curious assertion that Plaintiff's stated facts are unsupported because they are based on exhibits that are not attached to Plaintiff's brief. *See id*. at 4-5 (¶¶ D-F) and 9 (¶ O). The exhibits were provided as attachments to the Affidavit of Cheryl Masters [Doc. No. 75-1] and are contained in the case record. *See* Pl.'s Ex. D [Doc. No. 75-5], Ex. G [Doc. No. 75-8] and Ex. H [Doc. No. 75-9]. Plaintiff points this out in its reply brief, but Defendants have not asked to make any further response.

employees properly. This evidence consists of conclusory statements in affidavits of Mr. and Mrs. Maranto that they followed the advice of Mr. Delciello prior to his death in 2014, and "if [they] were violating the law with regard to minimum wage or overtime, it was the result of [their] reliance on our CPA." *See* J. Maranto Aff. [Doc. No. 112-1], ¶ 11; M. Maranto Aff. [Doc. No. 112-2], ¶ 10. Both Mr. and Mrs. Maranto deny "intentionally or willfully violating the law," and both say, "We were doing our best to follow the law." *Id*.

Despite these statements, Defendants provide no facts to show that Mr. Delciello provided advice regarding the minimum wage issues identified by DOL (deducting break periods, rounding fractional hours, and not paying bussers or making seasonal adjustments in wages of tipped employees).[9] Further, regarding overtime, Mr. Maranto has testified that Mr. Delciello specifically advised him that Meers was required to pay one and one-half times the regular rate for overtime hours. *See* J. Maranto Dep. 170:6-171:8.[10] As stated *supra*, Mrs. Maranto has admitted intentionally omitting employees' overtime hours from the payroll summaries she created, and withholding information from Meers' accountants about overtime payments to employees. There is no evidence the accountants knew of this practice.[11]

---

[9] To the contrary, Mr. Maranto has testified that he and Mr. Delciello did not discuss paying employees for breaks. *See* J. Maranto Dep. 171:9-11.

[10] Mr. Maranto intended to avoid overtime pay by scheduling employees' work so that no one exceeded 38 hours per week. *See id*. 74:21-75:20, 101:4-15. He faulted Mrs. Maranto for failing to follow his 38-hour rule. *Id*. 75:21-76:3, 101:16-24.

[11] Mrs. Maranto has testified that she told Mr. Delciello about making cash payments to certain employees for regular work hours and "he said, okay, as long as you have a record." *See* M. Maranto Dep. 148:9-17. According to Mrs. Maranto, Mr. Delciello also knew about cash

9

Due to a lack of payroll records and a limited amount of historical information, DOL investigators calculated an amount of unpaid wages due to Meers' employees using estimation methods, as described in the affidavit of Cheryl Masters, to reconstruct back wages owed for each category of worker (part-time kitchen staff, full-time kitchen staff, servers, hostesses, bussers, and kitchen managers). For example, to calculate unpaid wages for improperly deducting work breaks of less than 20 minutes, Ms. Masters used time records and interview statements to estimate a total amount of off-the-clock ("OTC") work time, and determined an average amount of OTC time for different categories of workers during slow seasons and busy seasons. In a similar manner, Ms. Masters estimated overtime compensation owed by determining the average number of hours worked by employees in each category and reconstructing hours worked and overtime wages due to each employee at one and one-half times his or her regular rate of pay. For wages owed to bussers, Ms. Masters used interview statements of bussers and other employees who worked with them to estimate the number of days and hours worked by each busser.

Based on reconstructed back wages for all employees during the investigation period, the total amount owed to Meers' employees for FLSA violations is $166,758.12.[12] Plaintiff also presents facts and evidence to show that Defendants committed additional

---

overtime payments, but she could not recall whether he knew about the failure to pay a time-and-a-half rate. *See id*. 185:12-186:7. Mrs. Maranto was clear that the accountants who took over payroll duties after Mr. Delciello's death did not know about cash payments. *See id*. 218:16-24.

[12] This amount "includ[es] a 10% reduction for all employees (except bussers) to account for weeks with unpaid vacation, sick days or holidays." *See* Masters Aff. [Doc. No. 75-1], ¶ 33. Ms. Masters provides a detailed summary as Exhibit I to her affidavit [Doc. No. 75-10].

FLSA violations after the investigation period (from January 20, 2015, to March 14, 2017) for which back wages are owed to employees in the amount of $1,085.56. Defendants provide no reliable basis to challenge the accuracy of these amounts.

## Discussion

**A.     FLSA Liability**

FLSA imposes duties on employers with respect to compensation of employees engaged in commerce or employed by an enterprise engaged in commerce. In relevant part, an "employer" as defined by FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). As the corporation that employed the restaurant workers, Meers plainly was their employer. The undisputed facts also establish that Mrs. Maranto acted in the interest of an employer in relation to Meers' employees. *See*, *e.g.*, *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) ("corporate officer principally in charge of directing employment practices, such as hiring and firing employees, requiring employees to attend meetings unpaid, and setting employees' wages and schedules" and "thus instrumental in 'causing' the corporation to violate the FLSA" was personally liable for violations). The Court finds that Defendants were both "employers" of Meers' employees, and thus, both Defendants are liable for the FLSA violations that occurred in the operation of Meers' restaurant.[13]

---

[13] Plaintiff contends Defendants are "jointly and severally liable" for FLSA compliance and payment of back wages. *See* Pl.'s Mot. Summ. J. at 20. Plaintiff cites no legal authority for joint and several liability, and Defendants oppose such a finding. *See* Defs.' Resp. Br. at 14. However, Defendants' joint and several liability follows as a matter of law from a finding that Mrs. Maranto is personally liable as an additional "employer" of Meers' employees. *See Chao*, 493 F.3d at 34 (FLSA holds corporate officers with "personal responsibility for statutory

11

**B.     Willfulness**

DOL's investigation period for Defendants' FLSA violations and back wage liability assumes a three-year statute of limitations. "The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies." *Mumby v, Pure Energy Servs. (USA), Inc*., 636 F.3d 1266, 1270 (10th Cir. 2011); *accord Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017); *see* 29 U.S.C. § 255(a). To establish a willful violation, Plaintiff must prove that Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct violated the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988); *see Mumby*, 636 F.3d at 1270. "Reckless disregard can be shown through action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Mumby*, 636 F.3d at 1270 (internal quotation omitted).

The undisputed facts shown by the record establish willful conduct by Meers and Mrs. Maranto acting on Meers' behalf in relation to employees. Like the employer in *El Tequila*, where the issue of willfulness was determined as a matter of law, Defendants manipulated and falsified payroll records (by concealing overtime hours), withheld and destroyed records, and recklessly disregarded their duties to keep records and determine whether their practices complied with FLSA. *See El Tequila*, 847 F.3d at 1255-56. Here, as in *El Tequila*, Defendants "took affirmative steps to create the appearance that [Meers]

---

compliance jointly and severally liable along with the corporation") (footnote omitted); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) (where joint employers exist, "each joint employer may be held jointly and severally liable for the FLSA violations").

complied with the FLSA." *Id*. at 1256. Even after DOL began its investigation and filed this action, Defendants failed to correct some FLSA violations. Further, Defendants provide no meaningful response in their summary judgment brief regarding the issue of willful conduct.[14] Under these circumstances, the Court finds that Plaintiff is entitled to a summary determination that Defendants' FLSA violations were willful.

## C. Computation of Unpaid Back Pay and Overtime Compensation

Plaintiff bears the burden to prove the amounts of unpaid back pay and overtime compensation due to employees during the relevant time period. Where an employer fails to keep adequate or accurate records of employees' work hours, however, Plaintiff can satisfy this burden by proving that employees "performed work for which [they were] improperly compensated" and by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1220 (10th Cir. 1998); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85-86 (10th Cir. 1983).

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

---

[14] In addition to Defendants' failure to dispute material facts, Defendants address the issue of willfulness in their summary judgment brief only by arguing that they relied on Mr. Delciello for advice (discussed *infra*) and that Mrs. Maranto adopted "unwise and unauthorized employee" policies as a favor to employees who preferred off-the-books payments to overtime compensation. *See* Defs.' Resp. Br. at 15-16. The law is clear, however, that employers and employees cannot agree to circumvent FLSA's requirements. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445, 67 L. Ed. 2d 641 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived"); *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011) ("FLSA guarantees minimum overtime compensation").

13

> If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
>
> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c)]. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.

*Anderson*, 328 U.S. at 687-88; *see Donovan*, 725 F.2d at 85-86.

In this case, it is undisputed that Meers' employees performed work for which they were not properly compensated. Based on available records and DOL's investigation, Plaintiff has produced evidence of the approximate amount due for uncompensated work by employees in various positions as a matter of reasonable inference. Defendants have not produced any admissible evidence to rebut the inference. Under these circumstances, Defendants are "not in a position to complain that the award is imprecise." *Donovan*, 725 F.2d at 86. Thus, the Court finds that Plaintiff's computation of unpaid back wages and overtime compensation should be accepted, and that an award should be made in the amounts shown by Plaintiff's Motion.

**D.    Liquidated Damages**

FLSA mandates that "[a]ny employer who violates the provisions of [29 U.S.C. § 206 (minimum wages) or § 207 (overtime compensation)] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages." *See* 29 U.S.C. § 216(b). "The purpose for the award of liquidated damages is

the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (internal quotation omitted); ); *see also Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004) ("liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA") (internal quotation omitted). A district court may decline to award liquidated damages or reduce the amount awarded only in limited circumstances provided by 29 U.S.C. § 260:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action [for unpaid minimum wages or overtime compensation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216].

Applying this provision, the Tenth Circuit has explained FLSA law governing an award of liquidated damages as follows:

> [T]he district court may eliminate or reduce the award of liquidated damages only if the employer demonstrates "both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act." *Doty v. Elias*, 733 F.2d 720, 725-26 (10th Cir. 1984). "The good faith requirement mandates the employer have 'an honest intention to ascertain and follow the dictates of the Act.'" *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)) . . . . "The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." *Brunner*, 668 F.2d at 753.

*Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1288-89 (10th Cir. 1994). "The employer has the plain and substantial burden of persuading the court by proof that his failure to obey

15

the statute was both in good faith and predicated upon such reasonable grounds . . . . In the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages." *Renfro*, 948 F.2d at 1540 (internal quotation omitted).

In this case, Defendants have not provided any substantial proof that their conduct in violation of FLSA was done in good faith or that they had a reasonable basis for believing their employee practices complied with FLSA's requirements. In their summary judgment brief, Defendants argue generally that they "relied on their long time CPA, Mr. Danny Delciello" and they had no reason to doubt his advice regarding FLSA compliance. *See* Defs.' Resp. Br. at 15-16, 25. Notably, Defendants do not identify any particular advice of Mr. Delciello that they were honestly attempting to follow. Nor do Defendants present any facts to show their conduct was objectively reasonable. On this record, the Court has no discretion to avoid or reduce the liquidated damages mandated by FLSA. Further, assuming Defendants had made a sufficient showing, the Court would retain discretion to award liquidated damages. *See Mumby*, 636 F.3d at 1272. Under the circumstances shown by the record, the Court finds insufficient reason to deny Defendants' employees an award of liquidated damages as provided by FLSA.

Therefore, the Court finds that Plaintiff is entitled to summary judgment awarding liquidated damages equal to the amount of unpaid minimum wages and overtime compensation.

### E. Injunctive Relief

FLSA authorizes the issuance of an injunction to restrain further violations by an employer who has violated the Act. *See* 29 U.S.C. § 217. "Where the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980). Injunctions are an important enforcement tool "because the cost of noncompliance is placed on the employer, which lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance." *See Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992) (citation omitted). "The issuance of a permanent injunction in FLSA cases does not subject an employer against whom its runs to a penalty or a hardship since it requires him to do what the Act requires anyway to comply with the law." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975) (internal quotation omitted). "In deciding whether to grant injunctive relief, a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur." *Brock v. Big Bear Mkt. No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987); *see Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 657 (6th Cir. 1994) (factors to be considered include the employer's past conduct, current conduct, and most importantly, "the likelihood that the employer will comply with the Act in the future"); *accord Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 815 (W.D. Pa. 2013).

In this case, the existing record provides no assurance that Defendants will comply with FLSA's requirements going forward. Defendants point to no facts that indicate a reasonable likelihood of future compliance. Quite the opposite, the record shows that Defendants did not correct compliance issues while this case was pending. The Court is particularly concerned by the prospect of continued violations of FLSA's child labor provisions and record keeping requirements, which cannot be remedied by awards of back pay and unpaid compensation. In short, the Court has no belief that past conduct by Defendants that led to their FLSA violations will be corrected without an injunction. Therefore, the Court finds that injunctive relief is appropriate and that future conduct by Defendants involving similar FLSA violations should be enjoined.

## Conclusion

For these reasons, the Court finds that Plaintiff is entitled to summary judgment in its favor on all FLSA claims asserted in the Complaint and all issues raised by its Motion, including willful conduct, liquidated damages, the amount of back wages and overtime compensation owed to Defendants' employees, and the need for a permanent injunction.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 75] is GRANTED. Plaintiff shall submit a proposed judgment and permanent injunction within 7 days from the date of this Order.

IT IS SO ORDERED this 27th day of April, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE